## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **LINDY ROBERT URSO** | : | **Case No:** |
| **Plaintiff,** | : | |
| | : | |
| **V.** | : | |
| | : | |
| ***HIS EXCELLENCY,*** | : | |
| **GOVERNOR NED LAMONT** | : | **Date:  August 18, 2020** |
| **Defendant.** | : | |
| | : | |

## <u>COMPLAINT</u>

1.      This action is brought in response to the ever-increasing encroachments by the defendant, Connecticut Governor Lamont, on the individual freedoms and liberties secured to Connecticut citizens by the United States and Connecticut Constitutions, by virtue of his series of Executive Orders issued in response to the Sars-CoV-2 outbreak in Connecticut.

2.      In particular, this action is addressed to the Governor's Executive Order 7bb, dated April 17, 2020, which provides in pertinent part that "any person in a public place in Connecticut who is unable to or does not maintain a safe social distance of approximately six feet from every other person shall cover their mouth and nose with a mask or cloth face-covering. In addition, individuals shall use a mask or cloth face covering when using the services of any taxi, car, livery, ride-sharing or similar service or means of mass public transit, or while within any semi-enclosed transit stop or waiting area."

## PARTIES

3.      The plaintiff Lindy Robert Urso is and at all times relevant has been a resident and citizen of the State of Connecticut.

4.      The defendant, His Excellency Edward Miner "Ned" Lamont, Jr. ("Governor Lamont") is and at all times relevant has been a resident of the State of Connecticut and currently holds the elected office of Governor of the State of Connecticut.  He is sued in his official capacity.

## JURISDICTION & VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and 1367(a), and 42 U.S.C. §§1983 and 1988.

6.      Venue is proper under 28 U.S.C. §1391(b)(1).

## FACTUAL ALLEGATIONS

7.      On or about March 10, 2020, Governor Lamont caused to be filed with the Connecticut Secretary of State a "Declaration of Public Health and Civil Preparedness Emergencies," pursuant to C.G.S. §§ 19-131a and 28-9.  (Exhibit A).

8.      Those two statutes delineate certain powers granted to the Governor in the event of such an emergency declaration, including the power to quarantine and/or isolate individuals known to have been exposed to a communicable disease.

2

9.     There is no language within those two (2) statutes authorizing the quarantining of healthy individuals.

10.     There is no evidence that the plaintiff has been exposed in any way to a communicable disease.

11.     On information and belief, until the current COVID-19 epidemic, no state or federal authority has ever quarantined healthy individuals – other than those known to have had contact with an infected person - during an outbreak or pandemic in U.S. history.

12.     On information and belief, until the current COVID-19 outbreak, no state or federal authority has ever purported to require citizens to wear restrictive masks over their mouths and noses in public.

13.     Beginning on March 12, 2020, the Governor issued the first of twenty-nine (29) Executive Orders, each created under the authority ostensibly granted him by C.G.S. §§19a-131b and 28-9.

14.     The most recent order, Executive Order 7bb issued on April 17, 2020, purports to order that the plaintiff (and all other people) may not travel in public within 6 feet of another individual without having a mask or cloth covering of some kind covering their mouth and nose.  (Exhibit B)

## The Outbreak

15.     There is, and has been, much fear being stirred amongst the public by both government and media sources about the dangers of COVID-19, the name being used for the effect of the current SARS-CoV-2 outbreak.

3

16.     The defendant himself has been at the epicenter of stirring up some of that fear in Connecticut.  In particular, the defendant falsely claimed on March 16, 2020 in a nationally televised interview that Danbury Hospital was "at capacity" and that "200 nurses from Danbury Hospital" were on furlough from having contact with Covid-19 infected people.    https://www.msnbc.com/all-in/watch/conn-gov-200-nurses-furloughed-due-to-lack-of-coronavirus-testing-danbury-hospital-at-capacity-80736325731.   As it turned out, there were 200 *hospital employees* - not just nurses - *across 7 hospitals in New York and Connecticut* in the Nuvance Health umbrella that were furloughed, and Danbury was *not* at capacity.    https://www.myrecordjournal.com/News/State/200-health-care-workers-possibly-exposed-to-virus-stay-home.

17.     Two weeks later, on April 1, 2020, the defendant told the public via press conference that a 7-month old newborn child had died from COVID-19, causing panic amongst new and expectant mothers nationwide.   The defendant also posted on his Twitter account that *"[t]esting confirmed last night that the newborn was COVID-19 positive.  This is absolutely heartbreaking.  We believe this is the one of the youngest lives lost anywhere due to complications relating to COVID-19."*  (Exhibit C).  After questions arose about the actual cause of the infant's death, the defendant backtracked from his claim that the death was caused by COVID-19.            https://www.courant.com/breaking-news/hc-br-infant-death-coronavirus-positive-20200404-54z75ceqzfei7ajtwskc4ncrua-story.html.

18.     Since the first recorded case of COVID-19 in the U.S. on or about January

21, 2020, approximately 31,070 deaths have been attributed to the virus.

https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.

19.     The number of Covid-19 deaths in the U.S. is almost surely artificially

inflated, because our governments are counting every dead person who tests

positive either pre or post-mortem as a "COVID-19 death," *regardless of the*

*actual cause of death. See, video of Dr. Deborah Birx, White House Coronavirus*

*Response Coordinator, at Presidential Briefing on April 8, 2020:*

https://www.realclearpolitics.com/video/2020/04/08/dr_birx_unlike_some_countri

es_if_someone_dies_with_covid-19_we_are_counting_that_as_a_covid-

19_death.html.

20.     Of the 11,356 deaths *fully* tabulated as of April 16, 2020 by the CDC, 78%

occurred in people aged 65 and above, and more than 91% of deaths involved

people 55 or older.     https://www.cdc.gov/nchs/nvss/vsrr/COVID19/index.htm.

Curiously, as of April 16, 2020 it appears as though the State of Connecticut is

the *only* state in the nation that has not yet submitted its data to the CDC.

https://www.cdc.gov/nchs/nvss/vsrr/COVID19/; (Exhibit D).

21.     As of April 14, 2020, approximately 3.1 million people had been tested in

the U.S. for Covid-19.     https://www.nytimes.com/2020/04/15/us/coronavirus-

testing-trump.html.     Thus, less than 1% of the entire U.S. population of

approximately     330     million,     has     been     tested     for     Covid-19.

https://www.census.gov/popclock/.     Most experts and laypeople agree that, in

light of the dearth of testing in the U.S., it is reasonable to infer that exponentially

more people have contracted the virus than have been test-confirmed positive; ergo, the mortality rate of Covid-19 may be very low.

22.     According to a March 26, 2020 editorial in the New England Journal of Medicine co-authored by Dr. Anthony Fauci – Director of the U.S. NIAID and leader of the U.S. Government's official medical response to this outbreak - "[i]f one assumes that the number of asymptomatic or minimally symptomatic cases is several times as high as the number of reported cases, the case fatality rate may be considerably less than 1%. This suggests that the overall clinical consequences of Covid-19 may ultimately be more akin to those of a severe seasonal influenza which has a case fatality rate of approximately 0.1%." (Exhibit E).

## "Flattening the Curve"

23.     The primary plan our state and federal authorities proposed to follow in combatting the outbreak was to "flatten the curve."  The idea, we were told by federal and state governmental authorities and major media outlets, is that by instituting dramatic "mitigation" measures – like shuttering schools and businesses and focusing on social distancing – the "peak" of the viral outbreak's curve would be lowered such that our healthcare system was not overburdened to the point that infected people would die unnecessarily, as happened in countries like Italy. https://www.npr.org/sections/goatsandsoda/2020/03/13/814602553/coronavirus-faqs-for-the-week-of-3-7-whats-flattening-the-curve-should-i-travel.

24.    Some countries around the world, such as Taiwan, Japan and Sweden, have opted against the severe social distancing measures and have not thus far seen dramatically different results. https://www.nationalreview.com/2020/04/coronavirus-response-sweden-avoids-isolation-economic-ruin/?fbclid=IwAR1kn-OibwtchZGX5Al6YUN9GkmhUrYuElpPDLnwHZPsPLuHFUFNAnEBdzg.

25.    The defendant began severe curve-flattening social distancing measures in Connecticut with the first of his 29 "emergency" Executive Orders, E.O. #7, on March 12, 2020.  Three and one-half weeks later, as of April 7, the rate of new COVID-19 hospitalizations was already on the decline. https://www.courant.com/coronavirus/hc-news-coronavirus-updates-0407-20200407-47gpe33o5bcmfhvvrcgxv2voru-story.html.    The CT Department of Public Health's April 13, 2020 update showed that, in the two weeks immediately prior, the Emergency Department hospitalization rate for people showing symptoms consistent with COVID-19 was plummeting.    (Exhibit F); https://portal.ct.gov/-/media/Coronavirus/CTDPHCOVID19summary4132020.pdf?la=en;

26.    Despite this dramatic decline in new emergency room hospitalizations, just five (5) days later the Defendant has ordered the wearing of masks or cloth face coverings in public.

27.    Six weeks ago, on or about March 3, 2020, it was reported by CBS that the Centers for Disease Control (CDC)" does not recommend that people who are well wear a facemask to protect themselves from respiratory diseases,

including COVID-19..." https://www.cbsnews.com/news/coronavirus-prevention-face-mask-not-helpful-wash-hands/.   Rather, experts were cautioning that "putting on a face mask without proper fitting and training could actually increase your risk." *Id*.

28.     According to that same March 3, 2020 CBS story, "'[i]f it's not fitted right, you're going to fumble with it,' explained Health and Human Services Secretary Alex Azar before a House Appropriations subcommittee on Wednesday. 'You're going to be touching your face, which is the No. 1 way you're going to get disease, is unclean hands touching your face.'" *Id*.

29.     There is no scientific basis to suggest that the measures ordered in the defendant's Executive Order 7bb will do anything to help stem the spread of the SARS-CoV-2 virus – and according to HHS Secretary Azar, it may well make the outbreak worse by causing the mask / cloth covering wearer to be infected.

30.     There is a study from 2015 which found that the type of homemade cloth masks the plaintiff has been ordered to wear in public provide effective protection only 3% of the time.  https://bmjopen.bmj.com/content/5/4/e006577.long.

31.     There is also a recent article co-authored by Dr. Lisa Brosseau, a retired professor at University of Illinois, Chicago who is a national expert on respiratory protection and infectious diseases, which suggested that "[s]weeping mask recommendations—as many have proposed—will not reduce SARS-CoV-2 transmission, as evidenced by the widespread practice of wearing such masks in Hubei province, China, before and during its mass COVID-19 transmission experience earlier this year. Our review of relevant studies indicates that cloth

masks will be ineffective at preventing SARS-CoV-2 transmission, whether worn as source control or as PPE." https://www.cidrap.umn.edu/news-perspective/2020/04/commentary-masks-all-covid-19-not-based-sound-data; (A copy of which is attached as Exhibit G).

32.      Dr. Brosseau's recent conclusion about the ineffectiveness of surgical or cloth masks against COVID-19 is consistent with the results of a 2009 study she conducted, which is found on the CDC website, where she concluded that none of the non-N95 certified surgical masks tested "exhibited adequate filter performance and facial fit characteristics to be considered respiratory protection devices." https://www.cdc.gov/niosh/nioshtic-2/20033859.html.

33.      It is highly questionable whether new and additional mitigation measures, such as those contained in the defendant's Executive Order 7bb, need to be instituted *at all* at this time, especially in light of the declining emergency room hospitalizations as indicated by the Department of Public Health graph.  (Exhibit F).  But to the extent it is reasonable to do so, these restrictive airway-blocking measures that the science indicates will have little or no positive effect -- and could in fact harm the plaintiff and others -- are not a legitimate answer.

34.      The damage to the plaintiff's individual freedoms, and even his health, that Executive Order 7bb causes far outweighs any theoretical public benefit to compelling all citizens to carry and/or wear a mask or cloth facial covering in public.

## COUNT ONE – VIOLATION OF THE
## CONSTITUTIONAL RIGHT TO PRIVACY

35.     Paragraphs 1-34 above are incorporated herein.

36.     The plaintiff has a right to choose whether and what to wear upon his person generally, and especially over his airways.

37.     The plaintiff has a right to breathe unabated and unencumbered by a mask of any kind.

38.     Wearing a surgical mask or home fashioned cloth covering over his nose and mouth will restrict and interfere with the ability of the plaintiff to breathe in fresh air and to do so in a normal and healthy manner.   This is particularly important in connection with COVID-19, as by all medical accounts this disease is inhibiting the body's ability to process oxygen.

39.     The plaintiff will be put in greater jeopardy of contracting COVID-19 by having to constantly bring his hands to his face to apply and remove a mask or cloth covering, than if he was not wearing one.

40.     The Governor's Order that he must carry and/or wear a mask while in public is an unconstitutional infringement on these liberty and privacy rights in violation of the  penumbra of rights enumerated in the Bill of Rights generally and specifically of the 5th, 9th and 14th Amendments to the U.S. Constitution, and Article 1st, §§8 and 10 of the Connecticut Constitution.

## COUNT TWO – VIOLATION OF THE
## CONSTITUTIONAL RIGHT TO EXPRESSION & ASSEMBLY

41.      Paragraphs 1-42 are incorporated herein.

42.      The plaintiff has a right to express himself freely, including the right to protest a perceived "fear campaign" surrounding the SARS-CoV-2 outbreak.

43.      The plaintiff, by walking in public without wearing a mask or face covering of any kind, is and has been making a political statement in protest of the fear-mongering, exaggeration, misinformation and other perceived misdeeds by our state and federal governments and our media in connection with this viral outbreak.

44.      The plaintiff likewise has a basic, natural right to meet and assemble with others in public spaces for any lawful purpose or activity.

45.      The plaintiff has a right to protest and otherwise air his complaints against the actions of the State of Connecticut, in public.

46.      The Governor's order that the plaintiff cannot be in public within 6 feet of another person without wearing a mask or cloth mouth and nose covering violates his freedoms of speech and assembly, and to petition his government, under the 1st, 9th and 14th Amendments to the U.S. Constitution and Article 1st, §§4, 5, and 14 of the Connecticut Constitution.

## COUNT THREE – VIOLATION OF THE
## CONSTITUTIONAL RIGHT TO MOVE FREELY

47.      Paragraphs 1-48 are incorporated herein.

48.      The plaintiff has a basic right to travel freely on public lands.

49.     The Governor's order restricting the plaintiff's movement unless he carries and/or wears a restrictive mask is an unconstitutional infringement of his fundamental right to travel, in violation of the 5th, 9th and 14th Amendments to the U.S. Constitution and Article 1st, §§8 and 10 of the Connecticut Constitution.

## COUNT FOUR – VIOLATION OF THE CONSTITUTIONAL RIGHT TO PERSONAL MEDICAL DECISIONS

50.     Paragraphs 1-49 are incorporated herein.

51.     There is empirical evidence that, during viral outbreaks and otherwise, people who have access to fresh air often fare better than those who do not.  A recent submission to the *Journal of Hospital Infection* discussed the history of "open air" treatment of various diseases in the U.S. in the past.   "[I]n the years before antibiotics became available, open-air therapy was the standard treatment for tuberculosis (TB) and other infectious diseases. Patients were nursed next to open windows in cross-ventilated wards or put outside, in their beds, to breathe fresh outdoor air. This was believed to aid their recovery and reduce the risk of cross- and re-infection. The open-air regimen was also widely used on casualties during the First World War; and during the 1918e1919 influenza pandemic." (Exhibit H).

52.     The plaintiff believes that his access to fresh air will give him a better chance to both avoid infection from the virus and help his immune systems' ability to deal with the virus should he get infected, or should he be afflicted in any other way.

53.     The defendant's Executive Order 7bb is an unconstitutional infringement of the plaintiff's right to control his own body and to make his own health decisions by restricting his access to fresh air in public, in violation of the 5th, 9th, and 14th Amendments to the U.S Constitution, and Article 1st, §§8 and 10 of the Connecticut Constitution.

## COUNT FIVE – 42 USC 1983

54.     Paragraphs 1-55 are incorporated herein.

55.     At all times relevant hereto, the defendant was acting under color of state law.

56.     The defendant's actions, pursuant to C.G.S. §§19a-131a, 28-9 and otherwise, have violated each of the plaintiff's aforementioned federal constitutional rights.

## COUNT SIX – C.G.S. §28-9 is Unconstitutionally Vague and Overbroad

57.     Paragraphs 1-58 are incorporated herein.

58.     On information and belief, the defendant's Executive Order 7bb was issued pursuant to the "catchall" provision of C.G.S. §28-9(b)(7), which provides that a governor may "take such other steps as are reasonably necessary in the light of the emergency to protect the health, safety and welfare of the people of the state, to prevent or minimize loss or destruction of property and to minimize the effects of hostile action."

59.     As this provision is being applied to the plaintiff, it is unconstitutionally vague and overbroad in violation of the 1st, 5th, 9th, and 14th Amendments to the U.S. Constitution and Article 1st, §§4, 5, 8, 10 and 14 of the Connecticut Constitution.

60.     "Those who would give up essential Liberty, to purchase a little temporary Safety, deserve neither Liberty nor Safety." *Benjamin Franklin* (11/11/1755)

## Prayer for Relief

WHEREFORE, the plaintiff seeks the following relief:

A.  A judgment declaring the defendant's Executive Order 7bb unconstitutional and therefore void.

B.  A judgment declaring C.G.S. 28-9(b)(7) unconstitutional and therefore void.

C.  An order enjoining permanently enforcement of the His Excellency the defendant's Executive Order 7bb.

C.  Costs.

E.   Such other relief as this Court deems fair and equitable.

Respectfully submitted,

By: _____

Lindy R. Urso (ct 20315)
*PRO SE*
810 Bedford Street, Suite 3
Stamford, CT 06901
(203) 325-4487
(203) 357-0608 (fax)
lindy@lindyursolaw.com

14