UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **LINDY ROBERT URSO** : | Case No: 20cv529 (KAD) |
| **Plaintiff,** : | |
| : | |
| V. : | |
| : | |
| ***HIS EXCELLENCY***, : | |
| **GOVERNOR NED LAMONT** : | Date:  May 20, 2020 |
| **Defendant.** : | |
| : | |

## FIRST AMENDED COMPLAINT

1. This action is brought in response to the ever-increasing encroachments by the defendant, Connecticut Governor Lamont, on the individual freedoms and liberties secured to Connecticut citizens by the United States and Connecticut Constitutions, by virtue of his series of Executive Orders issued in response to the Sars-CoV-2 outbreak in Connecticut.

2. In particular, this action is addressed to the Governor's Executive Orders requiring the wearing of masks, some of which have been issued and others which will presumably be forthcoming as the Governor issues further Orders easing or amending the effects of his current orders.  Presently, Executive Order 7V (Safe Workplace Rules); Executive Order 7bb (Masks in Public); and Executive Order 7PP (Sector Rules for Retail and Mall), purport to mandate the wearing of masks under various circumstances.

3. Executive Order 7V and the concomitant "Safe Workplace Rules" issued by the Commissioner of Economic and Community Development mandate, *inter*

1

*alia,* that "[e]ach employee shall be required to wear a mask or other cloth material that covers his or her mouth and nose while in the workplace, except to the extent an employee is using break time to eat or drink." (Exhibit B).

4.  Executive Order 7BB provides, in pertinent, part that "any person in a public place in Connecticut who is unable to or does not maintain a safe social distance of approximately six feet from every other person shall cover their mouth and nose with a mask or cloth face-covering. In addition, individuals shall use a mask or cloth face covering when using the services of any taxi, car, livery, ride-sharing or similar service or means of mass public transit, or while within any semi-enclosed transit stop or waiting area." (Exhibit C).

5.  Executive Order 7PP and the concomitant "Sector Rules for Retail and Mall," (which supersede the "Safe Store Rules" referenced in EO 7BB) mandate in all retail establishments, *inter alia,* that "[c]ustomers are required to bring and wear masks or cloth face coverings that completely cover the nose and mouth, unless doing so would be contrary to his or her health or safety due to a medical condition." (Exhibit D, p. 7).

**PARTIES**

6.  The plaintiff Lindy Robert Urso is and at all times relevant has been a resident and citizen of the State of Connecticut.

7.  The defendant, His Excellency Edward Miner "Ned" Lamont, Jr. ("Governor Lamont") is and at all times relevant has been a resident of the State of Connecticut and currently holds the elected office of Governor of the State of Connecticut. He is sued in his official capacity.

## JURISDICTION & VENUE

8. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and 1367(a), and 42 U.S.C. §§1983 and 1988.

9. Venue is proper under 28 U.S.C. §1391(b)(1).

## FACTUAL ALLEGATIONS

10. On or about March 10, 2020, Governor Lamont caused to be filed with the Connecticut Secretary of State a "Declaration of Public Health and Civil Preparedness Emergencies," pursuant to C.G.S. §§ 19-131a and 28-9. (Exhibit A).

11. Those two statutes delineate certain powers granted to the Governor in the event of such an emergency declaration, including the power to quarantine and/or isolate individuals known to have been exposed to a communicable disease.

12. There is no language within those two (2) statutes authorizing the quarantining of healthy individuals.

13. There is no evidence that the plaintiff has been exposed in any way to a communicable disease or that he is currently COVID-19 positive.

14. There is no evidence that COVID-19 is being spread in supermarkets, other retail outlets, business offices, or in public. To the contrary, recent evidence shows that most people are contracting the virus inside the home. (Exhibit E); https://www.medrxiv.org/content/10.1101/2020.04.04.20053058v1

(79.9% of outbreaks occurred in homes); see also, (Exhibit F); https://www.cbsnews.com/news/cuomo-coronavirus-patients-new-york-at-home-not-working/ (84% of new hospital admissions in NY were people who had been self-isolating in their homes – 66% - or in nursing homes – 18%).

15. On information and belief, until the current COVID-19 epidemic, no state or federal authority has ever quarantined healthy individuals – other than those known to have had contact with an infected person - during an outbreak or pandemic in U.S. history.

16. On information and belief, until the current COVID-19 outbreak, no state or federal authority has ever purported to require citizens to wear restrictive masks over their mouths and noses in public.

17. Beginning on March 12, 2020, the Governor issued the first of forty-three (43) Executive Orders, each created under the authority ostensibly granted him by C.G.S. §§19a-131b and 28-9.

18. Three particular Executive Orders – 7V, along with its concomitant regulatory "Safe Workplace in Essential Business" rules; 7BB; and 7PP, along with its concomitant "Sector Rules for Retail and Mall" – purport to order that the plaintiff, and all other people, must carry and under various circumstances wear a mask or cloth covering of some kind covering their mouth and nose. (Exhibits B, C, and D).

## The Outbreak

19.     There is, and has been, much fear being stirred amongst the public by both government and media sources about the dangers of COVID-19, the name being used for the effect of the current SARS-CoV-2 outbreak.

20.     The defendant himself has been at the epicenter of stirring up some of that fear in Connecticut. In particular, the defendant falsely claimed on March 16, 2020 in a nationally televised interview that Danbury Hospital was "at capacity" and that "200 nurses from Danbury Hospital" were on furlough from having contact with Covid-19 infected people. https://www.msnbc.com/all-in/watch/conn-gov-200-nurses-furloughed-due-to-lack-of-coronavirus-testing-danbury-hospital-at-capacity-80736325731. As it turned out, there were 200 *hospital employees* - not just nurses - *across 7 hospitals in New York and Connecticut* in the Nuvance Health umbrella that were furloughed, and Danbury was *not* at capacity. (Exhibit G); https://www.myrecordjournal.com/News/State/200-health-care-workers-possibly-exposed-to-virus-stay-home.

21.     Two weeks later, on April 1, 2020, the defendant told the public via press conference that a 7-month old newborn child had died from COVID-19, causing panic amongst new and expectant mothers nationwide. The defendant also posted on his Twitter account that *"[t]esting confirmed last night that the newborn was COVID-19 positive. This is absolutely heartbreaking. We believe this is the one of the youngest lives lost anywhere due to complications relating to COVID-19."* (Exhibit H). After questions arose about the actual cause of the infant's

5

death, the defendant backtracked from his claim that the death was caused by COVID-19. https://www.courant.com/breaking-news/hc-br-infant-death-coronavirus-positive-20200404-54z75ceqzfei7ajtwskc4ncrua-story.html.

22. Since the first recorded case of COVID-19 in the U.S. on or about January 21, 2020, approximately 67,008 deaths have been attributed solely to the virus as of May 19, 2020, per a provisional tally done by the U.S. Centers for Disease Control ("CDC"). (Exhibit I); https://www.cdc.gov/nchs/nvss/vsrr/covid19/index.htm?fbclid=IwAR0qQt4-SX21tDWjkPcxglL83agWeH9n5tUoOHrJu5f5ahwqz1kQQfYoaoo

23. The number of Covid-19 deaths in the U.S. is almost surely artificially inflated, because our governments are counting every dead person who tests positive either pre or post-mortem as a "COVID-19 death," regardless of the actual cause of death. *See, video of Dr. Deborah Birx, White House Coronavirus Response Coordinator, at Presidential Briefing on April 8, 2020:* https://www.realclearpolitics.com/video/2020/04/08/dr_birx_unlike_some_countries_if_someone_dies_with_covid-19_we_are_counting_that_as_a_covid-19_death.html.

24. Of the 54,861 deaths tabulated as of the week ending May 9, 2020 by the CDC, 80% occurred in people aged 65 and above, and more than 92% of deaths involved people 55 or older. (Exhibit J); https://data.cdc.gov/NCHS/Provisional-COVID-19-Death-Counts-by-Sex-Age-and-S/9bhg-hcku/data.

25. As of May 19, 2020, Connecticut had reported to the CDC 564 deaths attributed solely to COVID-19. (See Exhibit I).

https://www.cdc.gov/nchs/nvss/vsrr/covid19/index.htm?fbclid=IwAR0qQt4-SX21tDWjkPcxgIL83agWeH9n5tUoOHrJu5f5ahwqz1kQQfYoaoo.

26. The defendant and his Department of Public health have been reporting much higher death numbers to the public than to the CDC. (Exhibit K); https://www.ctpost.com/news/coronavirus/article/Data-70-of-CT-coronavirus-linked-deaths-have-15271386.php. On information and belief, the discrepancy is due to the fact that the defendant and his agents are including "suspected" but unconfirmed deaths in the COVID-19 numbers they are releasing to the public.

27. Moreover, according to that May 14, 2020 Connecticut Post report, the vast majority of deaths from COVID-19 in Connecticut have occurred not among the public at large but, rather, in nursing homes. "Together, the [nursing home] deaths represent roughly 70 percent of the 3,125 COVID-19-related fatalities reported statewide as of Wednesday." (Id.)

28. As of April 14, 2020, approximately 3.1 million people had been tested in the U.S. for Covid-19.  https://www.nytimes.com/2020/04/15/us/coronavirus-testing-trump.html. Thus, less than 1% of the entire U.S. population of approximately 330 million, had been tested for Covid-19. https://www.census.gov/popclock/. Most experts and laypeople agree that, in light of the dearth of testing in the U.S., it is reasonable to infer that exponentially more people have contracted the virus than have been test-confirmed positive; ergo, the mortality rate of Covid-19 may be very low. A recent study out of Stanford University is consistent with that conclusion. (Exhibit L);

https://sanfrancisco.cbslocal.com/2020/04/18/coronavirus-stanford-health-study-covid-cases-widespread-santa-clara-county/

29.     According to a March 26, 2020 editorial in the New England Journal of Medicine co-authored by Dr. Anthony Fauci – Director of the U.S. NIAID and leader of the U.S. Government's official medical response to this outbreak - "[i]f one assumes that the number of asymptomatic or minimally symptomatic cases is several times as high as the number of reported cases, the case fatality rate may be considerably less than 1%. This suggests that the overall clinical consequences of Covid-19 may ultimately be more akin to those of a severe seasonal influenza which has a case fatality rate of approximately 0.1%." (Exhibit M);

https://www.nejm.org/doi/full/10.1056/NEJMe2002387?fbclid=IwAR308qtST5eF_Hssmx4LEOwRBpfZcUIfV-hJtxDZxOmW_UKdG17o2tc2Lc0

### "Flattening the Curve"

30.     The primary plan our state and federal authorities proposed to follow in combatting the outbreak was to "flatten the curve." The idea, we were told by federal authorities, the defendant and his agents, and major media outlets, is that by instituting dramatic "mitigation" measures – like shuttering schools and businesses and focusing on social distancing – the "peak" of the viral outbreak's curve would be lowered such that our healthcare system was not overburdened to the point that infected people would die unnecessarily, as happened in countries like Italy.

https://www.npr.org/sections/goatsandsoda/2020/03/13/814602553/coronavirus-faqs-for-the-week-of-3-7-whats-flattening-the-curve-should-i-travel.

31. Some countries around the world, such as Taiwan, Japan and Sweden, have opted against the severe social distancing measures and have not thus far seen dramatically different results. https://www.nationalreview.com/2020/04/coronavirus-response-sweden-avoids-isolation-economic-ruin/?fbclid=IwAR1kn-OibwtchZGX5Al6YUN9GkmhUrYuEIpPDLnwHZPsPLuHFUFNAnEBdzg.

32. The defendant began severe curve-flattening social distancing measures in Connecticut with the first of his 43 "emergency" Executive Orders, E.O. #7, on March 12, 2020. Three and one-half weeks later, as of April 7, the rate of new COVID-19 hospitalizations was already on the decline. https://www.courant.com/coronavirus/hc-news-coronavirus-updates-0407-20200407-47gpe33o5bcmfhvvrcgxv2voru-story.html. The CT Department of Public Health's April 13, 2020 update showed that, in the two weeks immediately prior, the Emergency Department hospitalization rate for people showing symptoms consistent with COVID-19 was plummeting. (Exhibit N); https://portal.ct.gov/-/media/Coronavirus/CTDPHCOVID19summary4132020.pdf?la=en.

33. Despite this dramatic decline in new emergency room hospitalizations, just five (5) days later the Defendant has ordered, via Executive Order 7BB, the wearing of masks or cloth face coverings in public.

34. Six weeks ago, on or about March 3, 2020, it was reported by CBS that the Centers for Disease Control (CDC)" does not recommend that people who are well wear a facemask to protect themselves from respiratory diseases, including COVID-19..." (Exhibit O); https://www.cbsnews.com/news/coronavirus-prevention-face-mask-not-helpful-wash-hands/. Rather, experts were cautioning that "putting on a face mask without proper fitting and training could actually increase your risk." (Id.)

35. According to that same March 3, 2020 CBS story, "'[i]f it's not fitted right, you're going to fumble with it,' explained Health and Human Services Secretary Alex Azar before a House Appropriations subcommittee on Wednesday. 'You're going to be touching your face, which is the No. 1 way you're going to get disease, is unclean hands touching your face.'" (Id.)

36. There is no scientific basis to suggest that the measures ordered in the defendant's "mask" Executive Orders will do anything to help stem the spread of the SARS-CoV-2 virus – and according to HHS Secretary Azar, it may well make the outbreak worse by causing the mask / cloth covering wearer to be infected. (Id.)

37. Moreover, it appears that the one and only randomized, controlled study on the safety and efficacy of cloth masks in preventing infections was done in 2015 and it found, *inter alia*, that the type of homemade cloth masks the plaintiff has been ordered to wear in public provide effective protection only 3% of the time. (Exhibit P); https://bmjopen.bmj.com/content/5/4/e006577.long.

38. There is also a recent article co-authored by Dr. Lisa Brosseau, a retired professor at University of Illinois, Chicago who is a national expert on respiratory protection, which suggested that "[s]weeping mask recommendations—as many have proposed—will not reduce SARS-CoV-2 transmission, as evidenced by the widespread practice of wearing such masks in Hubei province, China, before and during its mass COVID-19 transmission experience earlier this year. Our review of relevant studies indicates that cloth masks will be ineffective at preventing SARS-CoV-2 transmission, whether worn as source control or as PPE." (Exhibit Q); https://www.cidrap.umn.edu/news-perspective/2020/04/commentary-masks-all-covid-19-not-based-sound-data.

39. Dr. Brosseau's recent conclusion about the ineffectiveness of surgical or cloth masks against COVID-19 is consistent with the results of a 2009 study she conducted, which is found on the CDC website, where she concluded that none of the non-N95 certified surgical masks tested "exhibited adequate filter performance and facial fit characteristics to be considered respiratory protection devices." (Exhibit R); https://www.cdc.gov/niosh/nioshtic-2/20033859.html.

40. Moreover, there is evidence that wearing a protective device actually inhibits oxygen intake and increases ingestion of carbon dioxide. (Exhibit S) https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4647822/. (In a study of pregnant health care workers, researchers stated: "Strikingly, wearing of the N95-mask during exercise resulted in lowering VO2 by 13.8 %...Similarly, VCO2 was lowered by 17.7 %...")

41.     There is no reason to believe that requiring healthy, uninfected people to wear surgical or cloth masks will do anything to prevent them from being infected with COVID-19 or prevent others from being so infected.

42.     It is highly questionable whether any new and additional mitigation measures need, or needed, to be instituted *at all* at this time, let alone the "mask" orders, especially in light of the declining emergency room hospitalizations as indicated by the April 13, 2020 Department of Public Health graph.  (Exhibit T); https://portal.ct.gov/-/media/Coronavirus/CTDPHCOVID19summary4162020.pdf?la=en.   But to the extent it is reasonable to continue and add mitigation measures *after* the "curve" has been flattened, the science indicates that there is no compelling, legitimate or rational reason for these restrictive airway-blocking measures, as they will have little or no positive effect – and could in fact harm the plaintiff and others.

43.     The damage to the plaintiff's individual freedoms, and even his health, that the mask requirements cause far outweighs any theoretical public benefit to compelling all citizens, healthy or not, to wear a mask or cloth facial covering.

## COUNT ONE – VIOLATION OF THE CONSTITUTIONAL RIGHT TO EXPRESSION & ASSEMBLY

44.     Paragraphs 1-43 are incorporated herein.

45.     The plaintiff has a right to express himself freely, including the right to protest a perceived "fear campaign" surrounding the SARS-CoV-2 outbreak.

46.     The plaintiff, by walking in public without wearing a mask or face covering of any kind, is and has been making a political statement in protest of the fear-mongering, exaggeration, misinformation and other perceived misdeeds by our

state and federal governments and our media in connection with this viral outbreak.

47. The plaintiff likewise has a basic, natural right to meet and assemble with others in public spaces for any lawful purpose or activity.

48. The plaintiff has a right to protest and otherwise air his complaints against the actions of the State of Connecticut, in public.

49. The defendant lacks a compelling, legitimate, or rational reason to issue the subject "mask" Executive Orders.

50. Each of the Governor's "mask" orders, including 7BB which requires that the plaintiff cannot be in public within 6 feet of another person without wearing a mask or cloth mouth and nose covering violates his rights to due process, freedom of speech and assembly, and to petition his government, under the 1st, 9th and 14th Amendments to the U.S. Constitution and Article 1st, §§4, 5, and 14 of the Connecticut Constitution.

## COUNT TWO – VIOLATION OF THE CONSTITUTIONAL RIGHT TO MOVE FREELY

51. Paragraphs 1-50 are incorporated herein.

52. The plaintiff has a basic right to travel freely on public lands.

53. The plaintiff as a basic right to obtain food and medicine from retail establishments.

54. The plaintiff has a basic and fundamental right to earn a living and, because of the defendant's mask orders, he is not being allowed to enter courthouses, where the plaintiff plies his profession, without wearing a mask of some sort over his nose and mouth.

55. The plaintiff has been denied entry to any drug store or grocery market to obtain necessary goods for the health and well-being of him and his family since the defendant's orders requiring that stores require customers to wear masks went into effect.

56. The plaintiff has a basic right to access to life-sustaining food and medicines for himself and his children, and to earn a living in order to so provide.

57. The Governor's orders restricting the plaintiff's movement unless he wears a restrictive mask is an unconstitutional infringement of his fundamental right to travel, to be healthy, to have access to life-sustaining food and medicine, to live, to earn a living, and to due process, in violation of the 5th, 9th and 14th Amendments to the U.S. Constitution and Article 1st, §§8 and 10 of the Connecticut Constitution.

### COUNT THREE – VIOLATION OF THE CONSTITUTIONAL RIGHT TO PERSONAL MEDICAL DECISIONS

58. Paragraphs 1-57 are incorporated herein.

59. Wearing a surgical mask or home fashioned cloth covering over his nose and mouth will restrict and interfere with the ability of the plaintiff to breathe in fresh air and to do so in a normal and healthy manner.

60. There is empirical evidence that, during viral outbreaks and otherwise, people who have access to fresh air often fare better than those who do not. A recent submission to the *Journal of Hospital Infection* discussed the history of "open air" treatment of various diseases in the U.S. in the past. "[I]n the years before antibiotics became available, open-air therapy was the standard treatment for tuberculosis (TB) and other infectious diseases. Patients were nursed next to

open windows in cross-ventilated wards or put outside, in their beds, to breathe fresh outdoor air. This was believed to aid their recovery and reduce the risk of cross- and re-infection. The open-air regimen was also widely used on casualties during the First World War; and during the 1918-1919 influenza pandemic." (Exhibit U).

61. The plaintiff believes that his access to fresh air will give him a better chance to both avoid infection from the virus and help his immune systems' ability to deal with the virus should he get infected, or should he be afflicted in any other way. This is particularly important in connection with COVID-19, as by all medical accounts this disease is inhibiting the body's ability to process oxygen.

62. By following the defendant's subject mask orders, the plaintiff will be put in greater jeopardy of contracting COVID-19 by, *inter alia*, having to constantly bring his hands to his face to apply and remove a mask or cloth covering, than if he was not wearing one.

63. The defendant's subject "mask" Executive Orders deprive the plaintiff of any ability to make his own medical decision at all, let alone with the long-standing medical principal of "informed consent."

64. The defendant's "mask" Executive Orders are an unconstitutional infringement of the plaintiff's right to control over his own body, to make his own health decisions, to breathe freely, to remain healthy, and to due process, by restricting his access to fresh air, in violation of the 5th, 9th, and 14th Amendments

to the U.S Constitution, and Article 1st, §§8 and 10 of the Connecticut Constitution.

## COUNT FOUR – VIOLATION OF THE CONSTITUTIONAL RIGHT TO PRIVACY

65. Paragraphs 1-64 above are incorporated herein.

66. The plaintiff has a right to choose whether and what to wear upon his person generally, and especially over his life-giving airways.

67. The plaintiff has a basic and natural right to breathe unabated and unencumbered by a mask of any kind.

68. The defendant has no business being involved in such a personal and private and medical decision whether to wear a device that covers his entire nose and mouth.

69. The Governor's Orders that the plaintiff must wear a mask in public, at work, and in retail establishments, are an unconstitutional infringement on these liberty and privacy interests in violation of the penumbra of rights enumerated in the Bill of Rights generally, and specifically of the 5th, 9th and 14th Amendments to the U.S. Constitution, and Article 1st, §§ 8 and 10 of the Connecticut Constitution.

## COUNT FIVE – 42 USC 1983

70. Paragraphs 1-69 are incorporated herein.

71. At all times relevant hereto, the defendant was acting under color of state law.

72. The defendant's actions, pursuant to C.G.S. §§19a-131a, 28-9 and otherwise, have violated each of the plaintiff's aforementioned federal constitutional rights.

## COUNT SIX – The Defendant Has No Authority to Issue Subject Orders and/or C.G.S. §28-9 is Unconstitutionally Vague and Overbroad

73. Paragraphs 1-72 are incorporated herein.

74. On information and belief, the defendant's subject Executive Orders were issued pursuant to the "catchall" provision of C.G.S. §28-9(b)(7), which provides that a governor may "take such other steps as are reasonably necessary in the light of the emergency to protect the health, safety and welfare of the people of the state, to prevent or minimize loss or destruction of property and to minimize the effects of hostile action."

75. There is no other provision of the law which would conceivably grant the defendant the authority to issue the subject Executive Orders.

76. The defendant's subject "mask" Executive Orders are not reasonably necessary to protect the health, safety and welfare of the people of the state..."

77. Ironically, the entire package of Executive Orders issued by the defendant thus far, from EO 7 to EO 7PP, not only do not "prevent or minimize loss or destruction of property...," which is a ground for emergency orders set forth in C.G.S. §28-9(b)(7), but they do essentially the opposite, as the orders that have caused the shuttering of businesses is causing immense loss and destruction of the State of Connecticut's, and Connecticut residents,' incomes and assets.

78. The subject "mask" Executive Orders (and all of the aforementioned emergency Executive Orders) have been issued without legal authority, are *ultra vires*, and are beyond the scope of authority granted the defendant by the

17

legislature in C.G.S. §28-9(b), 19a-131 et seq., or elsewhere in the Connecticut General Statutes or the state Constitution.

79.  As C.G.S. 19a-131 et seq. and §28-9(b) in general, and subsection (7) thereof in particular, are being applied to the plaintiff, they are unconstitutionally vague and overbroad and violate the right to due process, in violation of the 1st, 5th, 9th, and 14th Amendments to the U.S. Constitution and Article 1st, §§4, 5, 8, 10 and 14 of the Connecticut Constitution.

80.  "Those who would give up essential Liberty, to purchase a little temporary Safety, deserve neither Liberty nor Safety." *Benjamin Franklin* (11/11/1755).

## Prayer for Relief

WHEREFORE, the plaintiff seeks the following relief:

A. A judgment declaring the "mask" portions of defendant's Executive Orders 7V, 7BB and 7PP unconstitutional and/or without legal authority and therefore void.

B. A judgment declaring C.G.S. §§ 19a-131 et seq. and 28-9, or portions thereof, unconstitutional and therefore void.

C. An order enjoining permanently enforcement of the His Excellency the defendant's Executive Order 7V, 7BB and 7PP.

D. Costs.

E. Such other relief as this Court deems fair and equitable.

                        Respectfully submitted,

By: _____
Lindy R. Urso (ct 20315)
*PRO SE*
810 Bedford Street, Suite 3
Stamford, CT 06901
(203) 325-4487
(203) 357-0608 (fax)
lindy@lindyursolaw.com