**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| LINDY ROBERT URSO, | : | 3:20-cv-00529-KAD |
| *Plaintiff*, | : | |
| v. | : | |
| *HIS EXCELLENCY*, GOVERNOR NED | : | |
| LAMONT, | : | |
| *Defendant*. | : | OCTOBER 19, 2020 |

<u>**Memorandum of Law in Support of Motion to Dismiss**</u>

Connecticut, like the rest of the Nation and the World, is in the midst of responding to the COVID-19 pandemic, which has reportedly killed over 200,000 people in the United States and many other people world-wide (A-1). COVID-19 is a novel disease and our collective understanding of it is constantly evolving, but the scientific consensus is that wearing masks in public is an important tool in slowing the spread of this deadly disease. As a result, the federal Centers for Disease Control ("the CDC") recommends that people wear masks and the Governor issued Orders requiring them (as have the vast majority of other Governors; the remainder of the Governors recommend them).

Plaintiff, an attorney proceeding *pro se*, asks this Court to second-guess the Governor's judgment (and, by extension, that of the CDC and the other Governors) and enjoin the Governor's mask Orders, thereby depriving people in Connecticut of the protection masks are commonly believed to provide. This Court lacks jurisdiction to do so, and Plaintiff's claims lack any merit. The Supreme Court and the Second Circuit have made clear that the Constitution gives the Governor—not Plaintiff—the authority and the responsibility to decide whether masks will help protect the people in Connecticut from COVID-19 and wide latitude in making that decision. This Court should dismiss Plaintiff's Second Amended Complaint in its entirety.

1

**Plaintiff's Factual Allegations, Legal Claims, and Relief Sought**

**I.    Plaintiff's Factual Allegations**

Plaintiff's operative Second Amended Complaint challenges aspects of several Executive Orders the Governor has "issued in response to the Sars-CoV-2 outbreak in Connecticut,[1]" *Second Amended Complaint*, ¶ 1 ("*2dAC*" or "Complaint"), an outbreak to which "'3,125 . . . fatalities had been reported statewide as of'" May 13, 2020. *Id.* at ¶ 22 (quoting Exhibit L to *2dAC*). Specifically, Plaintiff challenges Executive Orders 7V, 7NNN, and 7PP and related guidance (collectively "the mask Orders") to the extent the challenged Orders "require[ ] the wearing of masks," *id.* at ¶ 2, including in "Connecticut schools." *Id.* at ¶ 6; *see id.* at ¶ 23 (alleging that Plaintiff "has three minor children, aged 10, 8, and 3, who are currently enrolled at North Street Elementary School in Greenwich").

By way of background, the Governor declared a public health and civil preparedness emergency in response to the COVID-19 pandemic on March 10, 2020 and renewed that declaration on September 1, 2020. *See id.* at ¶¶ 11-13, and Exhs. A-C. Under Connecticut law, the Governor's emergency declarations gave the Governor the authority to take various actions to protect people in Connecticut from COVID-19. *See id.* at ¶ 14. The Governor "based his Emergency Declaration and concomitant Executive Orders [on] [Conn. Gen. Stat.] §§19a-131b and 28-9." *Id.*

---

[1] As Plaintiff alleges, COVID-19 is the name being commonly used for this disease. *Second Amended Complaint*, ¶ 24. Therefore, the Governor will refer to the disease as COVID-19 in this Memorandum.

Plaintiff alleges that "[t]here is no evidence that [he] has been exposed in any way to a communicable disease or that he is currently COVID-19 positive." *Id*. at ¶ 17. Plaintiff further alleges that "[t]here is no evidence that COVID-19 is being spread in supermarkets, other retail outlets, business offices, or in public," *id*. at ¶ 18, that following the Governor's "severe curve-flattening social distancing measures[2]" Connecticut had a "dramatic decline in new emergency room hospitalizations" five days before the Governor issued his first Order requiring masks "(which has since been superseded by Executive Order 7NNN)," *id*. at ¶ 36, and that there were indications in March 2020 that "the case fatality rate [of COVID-19] may be considerably less than 1%." *Id*. at ¶ 31. Therefore, Plaintiff alleges that the Orders' mask requirements are unnecessary given the limited threat Plaintiff believes COVID-19 poses.

Plaintiff also alleges that the mask requirements are unlikely to be effective for two broad reasons. First, in his Complaint, Plaintiff alleges that "on or about March 3, 2020, it was reported by CBS that the CDC 'd[id] not recommend that people who are well wear a facemask to protect themselves from respiratory diseases, including COVID-19. . .'" *Id*. at ¶ 37 (quoting Exhibit Q).

Importantly, however, Plaintiff neglects to point out to the Court that the same Exhibit—which controls to the extent it contradicts the allegations in Plaintiff's Complaint[3]—is headed by an "***Editor's note:***" that states that "*Health officials' views on <u>wearing face masks</u> have shifted as the outbreak spreads. On Friday, April 3,* [both before Plaintiff filed this Second Amended Complaint and before the Governor issued an Order requiring masks[4]] <u>*President Trump*</u>

---

[2] *Id*. at ¶ 35.
[3] *See, e.g.*, *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146-47 (2d Cir. 2011) (Per Curiam) ("*Amidax*").
[4] Order 7BB was the first Order to require face coverings and it was issued on April 17, 2020.

<u>*announced*</u> *that the CDC now recommends Americans wear a 'basic cloth or fabric mask,' not a medical-grade mask, in public.*" Exhibit Q, p. 2 (ECF No. 21-17) (emphases in the Exhibit). Plaintiff does not address the CDC's recommendation that Americans wear a basic cloth or fabric mask, as announced by the President, in his Complaint. *See id.*; *see also* (A-13).

Second, Plaintiff relies on various statements by federal officials made prior to the CDC's re-assessment of its recommendation as the pandemic spread and scientific understandings changed, as well as studies or articles that Plaintiff alleges establish that "[t]here is no scientific basis to suggest that the measures ordered in the defendant's 'mask' Executive Orders will do anything to help stem the spread of" COVID-19 and may make matters worse. *Id.* at ¶ 39. That said, Plaintiffs' own specific allegations contradict his broad allegation that there is no scientific basis for the Orders; Plaintiff alleges "that the one and only randomized, controlled study on the safety and efficacy of cloth masks in preventing infections . . . found, *inter alia*, that the type of homemade cloth masks the plaintiff [allegedly] has been ordered to wear in public provide effective protection . . . 3% of the time." *Id.* at ¶ 40.[5]

Finally, Plaintiff alleges that a study involving "pregnant health care workers" indicates that wearing a "N95-mask"—a type not required by the Orders—"during exercise" "inhibits oxygen intake and increases ingestion of carbon dioxide." *Id.* at ¶ 43 (quotation marks omitted). Notably, Plaintiff does not allege that he is pregnant, that the Orders require him to wear a N95 mask, or that he otherwise suffers from a medical condition that will lead him to suffer harm from wearing any sort of mask. To the contrary, Plaintiff acknowledges that the Orders do not

---

[5] In the language removed by the ellipsis, Plaintiff dismisses this protection as "only 3% of the time." *Id.* at ¶ 40.

require anyone to wear a mask if "'doing so would be contrary to his or her health or safety due to a [documented] medical condition.'" *Id*. at ¶ 5 (quoting Exhibit F, p. 7).

Based on the above factual assertions, Plaintiff alleges that "[t]here is no reason to believe that requiring healthy, uninfected people to wear surgical or cloth masks will do anything to prevent them from being infected with COVID-19 or prevent others from being so infected." *Id*. at ¶ 44. Consequently, "[t]he damage to the plaintiff's individual freedoms, and even his health, that the mask requirements cause far outweighs any theoretical benefit to compelling all citizens, healthy or not, to wear a mask or cloth facial covering, particularly now, when the pandemic curve has reached its nadir." *Id*. at ¶ 49.

## II.    Plaintiff's Legal Claims and the Relief Sought

Plaintiff's Complaint sounds in Six Counts, titled: (1) violation of the Constitutional Right to Expression and Assembly; (2) violation of the Constitutional Right to Move Freely; (3) violation of the Constitutional Right to Personal Medical Decisions; (4) violation of the Constitutional Right to Privacy; (5) 42 U.S.C. § 1983; and (6) the Defendant Has No Authority to Issue Subject Orders and/or C.G.S. § 28-9 is Unconstitutionally Vague and Overbroad. The Governor will discuss Plaintiff's claims in more detail in the argument section below.

Plaintiff names the Governor in his official capacity. *See id*. at ¶ 8. Plaintiff asks this Court to declare the challenged Orders void and to permanently enjoin their enforcement. *See id*. at p. 20 ¶¶ A and C. Plaintiff also asks this Court to declare "C.G.S. §§ 19a-131 et seq. and 28-9, or portions thereof, unconstitutional and therefore void." *Id*. at p. 20 ¶ B. In addition, Plaintiff asks this Court to award him costs. *Id*. at p. 18 ¶ D.

5

## **Procedural Background**

Plaintiff filed his original Complaint on April 18, 2020. (ECF No. 1). Plaintiff filed his First Amended Complaint on May 20, 2020 (ECF No. 7), but waited until July 9, 2020 to serve the Governor. (ECF No. 8). With Plaintiff's consent, the Governor later sought—and this Court granted—an extension of time through August 29, 2020 in which to respond to Plaintiff's First Amended Complaint. (ECF No. 11).

When Plaintiff filed his First Amended Complaint, Executive Order 7BB imposed a face covering requirement. On August 14, 2020, the Governor issued Executive Order 7NNN, which repealed Executive Order 7BB and replaced it with a modified requirement to wear a mask or face covering. Undersigned counsel promptly reached out to Plaintiff to advise Plaintiff of the change, and Plaintiff informed undersigned counsel that Plaintiff planned to seek leave to supplement his First Amended Complaint.

Plaintiff filed his Motion to Amend on September 9, 2020 (ECF No. 17) without the required proposed amended Complaint. This Court granted Plaintiff's Motion on September 16, 2020, Ordering Plaintiff to "file the amended complaint by the close of business **Friday, September 18, 2020**." ECF No. 18 (emphasis in the Court's Order). When this Court's deadline passed without Plaintiff filing his Amended Complaint, undersigned counsel promptly reached out to Plaintiff. Plaintiff then filed a Motion for Leave to Amend After Deadline, representing that "Plaintiff simply missed the ECF email containing the Court's Order" requiring Plaintiff to file his Second Amended Complaint by the close of business on September 18th. (ECF No. 20). This Court granted Plaintiff's Motion, and under this Court's Orders the Governor's deadline to

6

respond to Plaintiff's operative Second Amended Complaint is October 26th. The Governor is filing this Motion early, in light of the Court's desire expressed in its telephonic conference that this case proceed as expeditiously as possible.

**Argument**

I.    **The Standard for this Motion to Dismiss**

This Motion is pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). "A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recov. Corp. v. Hellas Tel.*, 790 F.3d 411, 416-17 (2d Cir. 2015) (quotation marks and citation omitted).

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). To meet that burden, a plaintiff "must allege facts that affirmatively and plausibly suggest that it has standing to sue" and the court "need not 'credit a complaint's conclusory statements without reference to its factual context.'" *Amidax*, 671 F.3d at 145 & 146 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009)). When a defendant files a Rule 12(b)(1) motion, the court "may refer to evidence outside the pleadings" to decide the motion. *Id*. Although the court accepts all material factual allegations in the complaint as true, it cannot draw inferences from the complaint favorable to the plaintiff or rely on conclusory statements in the complaint. *See, e.g.*, *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) ("*J.S.*").

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Nielsen v. Rabin*, 746 F.3d

7

58, 62 (2d Cir. 2014) (quotation marks omitted). This Court must "accept as true all factual allegations and draw from them all reasonable inferences; but [it is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Id.* (quotation marks omitted). This Court properly may consider judicial notice materials in deciding this Motion under either Rule 12(b)(1) or Rule 12(b)(6). *See, e.g.*, *United States ex rel. Wood v. Allergan, Inc.*, 899 F.3d 163, 169 n.5 (2d Cir. 2018) (Rule 12(b)(6)); *Salvagno v. Williams*, 2019 U.S. Dist. LEXIS 107717, at *16 (D. Conn. June 27, 2019) (Shea, J.) (Rule 12(b)(1), and citing cases).

Finally, although the Court is ordinarily "solicitous toward a *pro se* party" and must construe *pro se* pleadings liberally, *Teichmann v. New York*, 769 F.3d 821, 826 n. 3 (2d Cir. 2014), "a lawyer representing himself ordinarily receives no such solicitude at all." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010).

## II.  The Eleventh Amendment Bars Plaintiff's Claims to the Extent they are Based on State Law and Challenge Orders or Rules that Have Been Superseded

The Eleventh Amendment bars Plaintiff's claims asking this Court to declare the challenged Orders inconsistent with Connecticut law, including the Connecticut Constitution, and enjoin their enforcement on that basis. *See 2dAC*, p. 20 ¶¶ A-C (seeking declaratory and injunctive relief); *see also id.* at ¶¶ 56, 63, 70, 69, 79 (relying, in part, on Connecticut statutes and the Connecticut Constitution). The Supreme Court has long held that the Eleventh Amendment bars claims where "a plaintiff alleges that a state official has violated *state* law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("*Pennhurst*") (emphasis in *Pennhurst*); *see also Raygor v. Regents of Univ. of Minnesota*, 534 U.S. 533, 541–42 (2002)

8

(holding that the supplemental jurisdiction statute does not "authorize district courts to exercise jurisdiction over claims against nonconsenting States").

It is well-established that "a federal court may not sit in judgment of whether a State or a State official has complied with its own law." *Dennehy v. Soto*, 2018 WL 4936003, at *2 (D. Conn. Oct. 11, 2018) (Shea, J.) (citing *Pennhurst*, 465 U.S. at 106). Courts in this Circuit have consistently applied that principle to deny review of challenges to the Governor's COVID-19 Orders on state law grounds, including (but not limited to) claims that the Governor exceeded his authority under state law similar to the claims Plaintiff brings in Count Six. *See, e.g.*, *Auracle Homes, LLC v. Lamont*, ___ F. Supp. 3d ___, 2020 U.S. Dist. LEXIS 141500, at *33-34 (D. Conn. Aug. 7, 2020) ("*Auracle*") (Bolden, J.) (citing *Elmsford Apartment Associates, LLC v. Cuomo*, 2020 WL 3498456, at *6 (S.D.N.Y. June 29, 2020) (appeal pending)); *Murphy v. Lamont*, 2020 WL 4435167, at *11 (D. Conn. Aug. 3, 2020) (Hall, J.).[6]

The Eleventh Amendment also bars Plaintiff's claims to the extent they are based on Orders and guidance that has been repealed or superseded. "[T]he Eleventh Amendment forbids federal courts from entering retroactive injunctive relief to remedy past violations of law which have been mooted by an amendment to a federal law." *Messier v. Southbury Training Sch.*, 1999 WL 20910, at *20 (D. Conn. Jan. 5, 1999) (Burns, J.) (citing *Green v. Mansour*, 474 U.S. 64, 73 (1985), and *Marbley v. Bane*, 57 F.[3]d 224, 232 (2d Cir. 1995)). That logic applies with equal force here to the extent Plaintiff's Second Amended Complaint challenges aspects of Order 7V

---

[6] To be clear, the Eleventh Amendment requires dismissal of each Count of Plaintiff's Second Amended Complaint to the extent that Count is based on state law, not just Count Six.

and Rules issued under that Order (or any Order) that have been superseded. *See, e.g., Marbley*, 57 F.3d at 232 (affirming the application of *Green* where the "state rescinded" the challenged policy during the course of litigation); *see also 2dAC*, ¶ 46 (alleging that it was "highly questionable" whether the mask orders "needed to be instituted *in the first instance*" in the form of the now-repealed Order 7BB (emphasis in *2dAC*)).

## III.    Plaintiff has Not Met His Burden to Show Standing

The Eleventh Amendment would not bar Plaintiff's Second Amended Complaint to the extent it could properly be construed as seeking prospective equitable relief against the Governor in his official capacity to ensure the Governor complies with the United States Constitution going forward. *See, e.g., Bonilla v. Semple*, 2016 WL 4582038, at *3 (D. Conn. Sept. 1, 2016) (Bolden, J.) (citing *Ex parte Young*, 209 U.S. 123 (1908)).[7] The Supreme Court created that exception "to strike a balance between preserving the Eleventh Amendment and the supremacy of federal law in our legal system" by rendering states and their officials acting in their official capacities immune from suit in federal court based on past conduct, while allowing federal courts—in appropriate circumstances—to require states and their officials to conform their future conduct to federal law. *Id.*

But Plaintiff would only have standing to seek prospective relief against the Governor that could fall outside the Eleventh Amendment's bar if his Second Amended Complaint "'alleg[d] facts that affirmatively and plausibly suggest that [he] ha[s] standing to sue.'" *Liberian*

---

[7] *See also In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) ("[U]nder the venerable doctrine of *Ex parte Young*, . . . a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective injunctive relief from violations of federal law." (quotation marks omitted)).

*Cmty. Ass'n of Connecticut v. Lamont*, 970 F.3d 174, 184 (2d Cir. 2020) (quoting *Cortlandt St. Recovery Corp.*, 790 F.3d at 417). Put differently, Plaintiff bears the "burden to prove [his] standing by pointing to specific facts" that allow him to invoke this Court's Article III jurisdiction. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412 n.4 (2013). That burden requires Plaintiff to "demonstrate standing for each claim he seeks to press" and "for each form of relief" that he seeks. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (quotation marks omitted). Plaintiff has not met his burden.

"The Supreme Court has called Article III standing perhaps the most important of the case-or-controversy doctrines placing limits on federal judicial power." *All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006) (quotation marks omitted). "Three elements comprise the irreducible constitutional minimum' of standing: the individual initiating the suit must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *United States v. Smith*, 945 F.3d 729, 736 (2d Cir. 2019) (quotation marks omitted).

Conclusory allegations are not enough to satisfy those elements; "'[w]hile the standard for reviewing standing at the pleading stage is lenient, a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing.'" *Robinson v. Sessions*, 721 F. App'x 20, 23 n.3 (2d Cir.), *cert. denied*, 138 S. Ct. 2584 (2018) (Summary Order) (A-6) (quoting *Baur v. Veneman*, 352 F.3d 625, 636-37 (2d Cir. 2003)). The Second Circuit has otherwise made clear that any inference that supports standing is unwarranted—although this Court generally "must accept as true all material factual allegations

in the complaint" for purposes of this Motion, it is "not to draw inferences from the complaint favorable to plaintiff[ ]." *J.S.*, 386 F.3d at 110.

Plaintiffs' Complaint does not "alleg[e] facts that affirmatively and plausibly suggest that" Plaintiff satisfies any of those three standing elements. *Liberian Cmty. Ass'n of Connecticut*, 970 F.3d at 184 (quotation marks omitted). The recent decision in *Bechade v. Baker*, 2020 U.S. Dist. LEXIS 174601 (D. Mass. Sep. 23, 2020), is instructive. In *Bechade*—as here—the plaintiff challenged a Governor's mask Orders and the Governor moved to dismiss on *inter alia* standing grounds. *See id.* at *4-6. The court granted the Governor's motion to dismiss, holding that although the plaintiff made various allegations about the mask mandate she did not "allege that she has *personally* been forced to wear a mask or to require her employees to wear a mask on any occasion." *Id.* at *5 (emphasis in *Bechade*). Therefore, she failed to "establish[ ] that she suffered any concrete and particularized injury with respect to the mask requirement" and failed to establish standing. *Id.* To the extent Plaintiff intended "to suggest that her injury is the general threat of fine that she faces for noncompliance with the mask requirement, . . . [e]very resident of Massachusetts faces the same general threat of enforcement" and such generalized grievances cannot support standing. *Id.*

The same logic would apply here. Like the plaintiff in *Bechade*, Plaintiff does not allege that he "has *personally* been forced to wear a mask" and instead seems to be concerned about the risk of enforcement if he refuses to wear a mask. *Id.* at *5 (emphasis in *Bechade*). Everyone in Connecticut faces that "same general threat of enforcement" and Plaintiff's generalized grievance cannot support standing. *See id.*; *see also National Shooting Sports Foundation, Inc. v.*

*Malloy*, 986 F. Supp. 2d 118, 123 (D. Conn. 2013) (Hall, J.) (granting a motion to dismiss on standing grounds, finding that the "Complaint does no more than state a 'generally available grievance about government,' which grievance is insufficient to support standing" (quoting *Lujan v. Defenders of Wildlife*, 504 U.S 555, 573-74 (1992)).

Even if this Court disagrees with *Bechade* or finds it distinguishable, this Court's decisions make clear that Plaintiff has not established standing for several of his claims for independent reasons. Specifically, Plaintiff does not allege facts that would establish standing for his claims based on his (recognized or alleged) rights to: (1) "meet and assemble with others," *2dAC*, ¶ 53; (2) protest, *see id.* at ¶ 54; (3) move freely, *see id.* at Count Two; (4) "travel freely on public lands," *see id.* at ¶ 58; (5) "obtain food and medicine from retail establishments," *see id.* at ¶ 59; and (6) earn a living. *See id.* at ¶ 60. That requires dismissal of those claims.

This Court's recent decision in *Murphy* is instructive. In *Murphy*, as here, the plaintiffs brought several challenges to the Governor's COVID-19 Orders. The Court held that the plaintiffs failed to establish standing for any of their claims, including claims alleging violations of "plaintiffs' substantive and procedural Due Process rights by restricting their movement and impairing their associational liberty interests," "plaintiffs' [First Amendment] rights of association, speech, [and] assembly." *Murphy*, 2020 WL 4435167, at *5.

The Court's reasoning in *Murphy* applies with even greater force here. Plaintiff's allegations are even more "conclusory" than the allegations in *Murphy* that this Court held "insufficient to establish that the plaintiff[ ] ha[s] suffered 'an injury-in-fact' that is 'fairly traceable' to the Governor's actions and would be redressed by the relief [he] seek[s]." *Id* at *4

(quoting *Lujan*, 504 U.S. at 561). As to Plaintiff's First Amendment assembly and protest claims, Plaintiff "do[es] not allege that [he has] any plans to [meet or protest] or ha[s] been actually prevented from" meeting or protesting. *Id* at *7. Nor could any "of the challenged Executive Orders . . . reasonably give th[e] impression" that the face covering requirements at issue prevent Plaintiff from meeting or protesting. *Id* at *6.

Similarly, Plaintiff does not allege facts that establish standing for claims based on alleged impairments of his right to move freely and to travel. Plaintiff simply states that he "has a basic right to travel freely on public lands," *2dAC*, ¶ 58, and that the "orders restricting the plaintiff's movement unless he wears a restrictive mask is an unconstitutional infringement of his fundamental right to travel." *Id*. at ¶ 63. "[S]uch allegations are far too vague to establish an injury-in-fact" for standing purposes, which require that an alleged injury must be 'concrete and particularized.'" *Murphy*, 2020 WL 4435167, at *4 (quoting *Lujan*, 504 U.S. at 561)).

Plaintiff has also failed to establish standing for his claims based on his alleged federal constitutional rights to "obtain food and medicine from retail establishments," *2dAC* ¶ 59, and earn a living. *Id.* at ¶ 60. Like the allegations referenced above, Plaintiff's allegations supporting these claims are "far too vague to establish an injury-in-fact." *Murphy*, 2020 WL 4435167, at *4. Plaintiff does not identify "any specific occurrence where he was prevented from" entering any courthouse, drug store, or grocery store because he refused to wear a face covering. *Id*. at *5.

14

**IV.     Plaintiff's Second Amended Complaint Fails to State a Claim on Which Relief May be Granted, to the Extent (if Any) this Court has Jurisdiction**

Plaintiff alleges that the challenged Orders violate several alleged federal[8] constitutional rights: (1) the Constitutional Right to Expression and Assembly, which Plaintiff characterizes as involving his federal "rights to due process, freedom of speech and assembly, and to petition his government, under the 1st, 9th and 14th Amendments to the U.S. Constitution," *2dAC*, ¶ 56; (2) the Constitutional Right to Move Freely, which Plaintiff characterizes as involving "his fundamental right to travel, to be healthy, to have access to life-sustaining food and medicine, to live, to  earn a living, and to due process" under "the 5th, 9th and 14th Amendments to the U.S. Constitution," *id.*  at ¶ 63; (3) the Constitutional Right to Personal Medical Decisions and those of his children, which Plaintiff characterizes as involving "the 5th, 9th, and 14th Amendments to the U.S. Constitution," *id.*  at ¶ 70; (4) the Constitutional Right to Privacy, which Plaintiff characterizes as involving "the penumbra of rights enumerated in the Bill of Rights generally, and specifically of the 5th, 9th and 14th Amendments to the U.S. Constitution," *id.* at ¶ 75; and (5) the right to Due Process to the extent the Orders "are unconstitutionally vague and overbroad." *Id.* at ¶ 86. None of Plaintiff's federal claims should survive this Motion to Dismiss.[9]

Plaintiff's blunderbuss approach makes it difficult to assess precisely what his claims are. That said, the analytical framework this Court should apply is clear. Both the Second Circuit and

---

[8] As discussed above, Supreme Court precedent establishes that the Eleventh Amendment bars Plaintiff's claims to the extent they are based on state law. *See, e.g.*, *Pennhurst*, 465 U.S. at 106. Therefore, the Governor's analysis will focus on Plaintiff's alleged federal claims.

[9] Count Five brings a 42 U.S.C. § 1983 claim based on the alleged violations of federal constitutional rights asserted in the prior counts, and this Court should therefore dismiss Count Five if this Court agrees that Plaintiff has no viable federal constitutional claim in Counts One through Four and/or Count Six. *2dAC*, ¶ 78.

the Supreme Court have recognized the "dramatic challenge[10]" posed by "COVID–19, a novel
severe acute respiratory illness that had killed thousands of people in [Connecticut] and more
than 100,000 nationwide" in May 2020 (and over 100,000 more nationwide since, *see* A-1) and
for which "[a]t this time, there is no known cure, no effective treatment, and no vaccine." *S. Bay
United Pentecostal Church v Newsom*, 140 S. Ct. 1613, 1613 (2020) ("*S. Bay*") (Roberts, C.J.,
concurring in denial of application for injunctive relief).[11]

"Our Constitution principally entrusts '[t]he safety and the health of the people' to the
politically accountable officials of the States 'to guard and protect.'" *Id*. (quoting *Jacobson v.
Commonwealth of Mass*., 197 U.S. 11, 38 (1905)). In Connecticut, that responsibility rests
primarily with the Governor. The pandemic has forced the Governor "'to act in areas fraught
with medical and scientific uncertainties,'" and the Supreme Court has made clear that under
these circumstances his "latitude 'must be especially broad." *Id*. (quoting *Marshall v. United
States*, 414 U.S. 417, 427 (1974)). "Where those broad limits are not exceeded, the[ Governor]
should not be subject to second-guessing by an 'unelected federal judiciary,' which lacks the
background, competence, and expertise to assess public health and is not accountable to the
people." *Id*. at 1613-14 (quoting *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S.
528, 545 (1985)).

When addressing other challenges to the Governor's COVID-19 Orders, this Court
implemented the Supreme Court's analytical approach by using a two-step analysis. First, this

---

[10] *Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 126 (2d Cir. 2020) ("*Fed. Defs.*").
[11] All references to *S. Bay* in this Memorandum are to the concurring opinion by Chief Justice Roberts, unless otherwise specified.

Court analyzed whether the plaintiff has stated a claim under the "traditional" constitutional analysis that would apply outside the context of a pandemic. *Amato v. Elicker*, 2020 WL 2542788, at *9 (D. Conn. May 19, 2020) (Shea, J). If Plaintiff has not stated a claim under traditional analysis, this Court should dismiss his Complaint without having to assess whether the Governor exceeded the "'especially broad'" latitude the Constitution grants him in responding to the pandemic. *S. Bay*, 140 S. Ct. at 1613 (quoting *Marshall*, 414 U.S. at 427).

If Plaintiff's allegations would warrant relief under traditional analysis at the first step, the second step is to determine whether Plaintiff's claims survive dismissal under the deferential *Jacobson* standard that applies in the pandemic context. *See Amato*, 2020 WL 2542788, at *10. *Jacobson* "requires that courts refrain from second-guessing state governments' responses unless there is 'no real or substantial relation' between the actions and the public health and safety or the action is 'beyond all question, a plain, palpable invasion of rights.'" *Id.* (quoting *Jacobson*, 197 U.S. at 31).

This Court should dismiss Plaintiff's claims in their entirety if it reaches their merits. As will be discussed in detail below, appellate precedent makes clear that this Court should dismiss Plaintiff's claims against the Governor to the extent they are premised on the Fifth and Ninth Amendments. That leaves Plaintiff's claims based on alleged violations of his: (A) First Amendment rights to expression, speech, assembly, and protest; (B) alleged Fourteenth Amendment rights to move freely or travel, have access to food and medicine, and to earn a living; (C) his alleged Fourteenth Amendment right to personal medical decisions; (D) his constitutional right to privacy, under the penumbra of rights enumerated in the Bill of Rights

17

generally, and the Fourteenth Amendment specifically; and (E) his Due Process rights against vagueness and overbreadth. None of Plaintiff's claims should survive this Motion to Dismiss, under either traditional analysis or *Jacobson* analysis.

### A. This Court Should Dismiss Plaintiff's Claims to the Extent they are Based on the Fifth Amendment Because the Fifth Amendment Does Not Apply to State Officials

This Court should dismiss Plaintiff's claims against the Governor to the extent they rely on the Fifth Amendment. "The Fifth Amendment applies to the federal government, not to the states." *Gonzalez-Torres v. Roy*, 2020 WL 376709, at *3 (D. Conn. Jan. 23, 2020) (Bolden, J.) (citing *Dusenbery v. United States*, 534 U.S. 161, 167 (2002)). Plaintiff "has not alleged that a federal official violated his Fifth Amendment rights" so this Court should dismiss Plaintiff's claims to the extent they rely on the Fifth Amendment. *Id.*; *see also Pena v. Aldi*, 2019 WL 2193465, at *5 (D. Conn. May 21, 2019) (Dooley, J.) (noting that "[t]he Fifth Amendment due process clause . . . applies only to actions by the United States government and federal employees" and dismissing the *pro se* plaintiff's Fifth Amendment claims).

### B. This Court Should Dismiss Plaintiff's Claims to the Extent they are Based on the Ninth Amendment Because the Ninth Amendment is Not an Independent Source of Rights

This Court should dismiss Plaintiff's claims to the extent they rely on the Ninth Amendment. "The Ninth Amendment is not an independent source of individual rights; rather, it provides a 'rule of construction' that [courts] apply in certain cases." *Jenkins v. Comm'r*, 483 F.3d 90, 92 (2d Cir. 2007) (quoting *United States v. Bifield*, 702 F.2d 342, 349 (2d Cir. 1983)). The Second Circuit has made clear that Plaintiff "cannot bolster or enhance an unavailing First

Amendment argument [(or arguments under other constitutional provisions[12])] merely by presenting [them] in the dress of . . . Ninth Amendment claim[s]." *Id.* at 94. For those reasons, "[t]he Ninth Amendment cannot serve as the basis for a § 1983 claim because such a claim must be premised on the violation of a right guaranteed by the U.S. Constitution or federal law." *Lloyd v. Lee*, 570 F. Supp. 2d 556, 566 (S.D.N.Y. 2008) (citing cases).

### C. This Court Should Dismiss Plaintiff's Substantive Due Process Claims to the Extent they Are Subsumed by Plaintiff's Other Constitutional Claims

Plaintiff references Due Process in several Counts of his Complaint. *See 2dAC*, ¶¶ 56, 63, 70 & 86. "Due process claims may take either of two forms: procedural due process or substantive due process." *DeLeon v. Little*, 981 F. Supp. 728, 734 (D. Conn. 1997) (Chatgny, J.). Although Plaintiff does not specify which form of Due Process claims he intends to bring, he alleges no facts that would implicate a procedural Due Process claim and therefore presumably intends to pursue only substantive Due Process claims.

"[T]he Supreme Court [has] narrowed the scope of substantive Due Process to claims that are not covered by other provisions of the Constitution." *Hu* v. *City of New York*, 927 F.3d 81, 103 (2d Cir. 2019) (citing cases, including *Graham v. Connor*, 490 U.S. 386, 394-95 (1989)). As a result, "[i]t is now well established that, [w]here another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process." *Id.*

---

[12] *See, e.g.*, *Alharbi v. Miller*, 368 F. Supp. 3d 527, 569–70 (E.D.N.Y. 2019) (dismissing Ninth Amendment claims where the plaintiffs brought separate claims under various other constitutional provisions, reasoning that "[p]laintiffs' Ninth Amendment claims are nothing more than a mere recasting of their other constitutional challenges, which are rooted in [the] historical interpretation of the principles embodied by separate constitutional provisions" (quotation marks omitted)).

at 104 (quotation marks omitted). That requires dismissal of Plaintiff's Due Process claims to the

extent they "are subsumed by" Plaintiff's "more particular allegations" under other constitutional

provisions, including—but not limited to—the First Amendment. *See id*. (citing cases holding

that substantive Due Process claims were subsumed by First Amendment claims).

### D. This Court Should Dismiss Plaintiff's First Amendment Claims Because the Orders Do Not Implicate the First Amendment

Count One combines several claims, including First Amendment claims based on alleged

violations of Plaintiff's rights to "freedom of speech and assembly, and to petition his

government." *2dAC*, ¶ 56. This Court should dismiss those claims.

The Supreme Court has made clear that while "[i]t is possible to find some kernel of

expression in almost every activity a person undertakes—for example, walking down the street

or meeting one's friends at a shopping mall— . . . such a kernel is not sufficient to bring the

activity within the protection of the First Amendment." *City of Dallas v. Stanglin*, 490 U.S. 19,

25 (1989). The Court has long "rejected the view that 'conduct can be labeled 'speech' whenever

the person engaging in the conduct intends thereby to express an idea" and instead has "extended

First Amendment protection only to conduct that is inherently expressive." *Rumsfeld v. Forum

for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 65–66 (2006) (quoting *United States v.

O'Brien*, 391 U.S. 367, 376 (1968)).

The Orders' requirement that Plaintiff wear a face covering does not mandate inherently

expressive conduct and therefore does not implicate the First Amendment. The recent decision in

*Antietam Battlefield KOA v. Hogan*, ___ F. Supp. 3d ___, 2020 U.S. Dist. LEXIS 88883 (D. Md.

20

May 20, 2020), is instructive. There, as here, the plaintiffs argued that a Governor's COVID-19 Order requiring face coverings violated their First Amendment rights. The district court applied *Rumsfeld* and *Stanglin* and held that the plaintiffs' First Amendment claims were not likely to succeed. *See id*. at *31-32. The same reasoning warrants dismissal of Plaintiff's claims here.

The Orders "regulate[ ] conduct, not speech"; they affect what Plaintiff "must *do* . . . not what [he] may or may not *say*." *Rumsfeld*, 547 U.S. at 60 (emphasis in *Rumsfeld*). Wearing a face covering "is not inherently expressive." *Id*. at 66. Plaintiff remains "free to disassociate himself" from the view that face coverings are necessary and to criticize the Orders as he sees fit. *Id*. at 65. Therefore, this Court should dismiss Plaintiff's First Amendment claims in their entirety (whether they are premised on speech, assembly, or petition). *See, e.g.*, *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011) ("acknowledg[ing] that the rights of speech and petition share substantial common ground"[13]); *Stanglin*, 490 U.S. at 24 (rejecting a First Amendment association claim where the associative conduct simply did "not involve the sort of expressive association that the First Amendment has been held to protect"); *Zalewska v. County of Sullivan*, 316 F.3d 314, 319-21 (2d Cir. 2003) (affirming dismissal of a First Amendment claim challenging a municipal transit authority's dress code because it did not involve expressive conduct that implicated the First Amendment); *Cf. Libertarian Party of Connecticut v. Merrill*, ___ F. Supp. 3d ___, 2020 U.S. Dist. LEXIS 113922, at *21 (D. Conn. June 27, 2020) (Hall, J.) (denying a request for a preliminary injunction directed at the Governor's COVID-19 Orders as

---

[13] To be clear, "Courts should not presume there is always an essential equivalence in the two Clauses or that Speech Clause precedents necessarily and in every case resolve Petition Clause claims." *Guarnieri*, 564 U.S. at 388. Here, however, Plaintiff's Second Amended Complaint offers no reason to treat the two claims differently.

they applied in the election context, and holding that the plaintiffs' claim "that the various social distancing and face covering requirements make their petitioning efforts less effective" did not "implicate[ ] the First Amendment" (quotation marks omitted)).[14]

### E. This Court Should Dismiss Plaintiff's Claim Based on an Alleged Violation of the Constitutional Right to Move Freely

Count Two is titled Violation of the Constitutional Right to Move Freely. To the extent courts have recognized such a right, they have considered it to be related to the right to intrastate travel. Although the Supreme Court has recognized only a right to interstate travel (and questioned the existence of a right to intrastate travel[15]), "the right to intrastate travel, or what we sometimes will refer to as the right to free movement, has been recognized in this Circuit." *Ramos v. Town of Vernon*, 331 F.3d 315, 322, *rev'd in part on other grounds*, 353 F.3d 171 (2d Cir. 2003).

Plaintiff's Second Amended Complaint does not state a right to move freely claim that can survive this Motion to Dismiss. Plaintiff's claim is based on conclusory allegations that the Orders violate his right to move freely because he is "not being allowed to enter courthouses," *2dAC*, ¶ 61, and "has been denied entry to any drug store or grocery market to obtain necessary

---

[14] This Court should independently dismiss any assembly or petition claims Plaintiff's Second Amended Complaint could be construed as alleging because they lack any factual basis. Plaintiff references those aspects of the First Amendment but "naked assertion[s]" devoid of "further factual enhancement" are not enough "[t]o survive a motion to dismiss" under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 (quotation marks omitted).

[15] *See, e.g.*, *Five Borough Bicycle Club v. City of New York*, 483 F. Supp. 2d 351, 362 n.68 (S.D.N.Y. 2007) (noting that "[t]he Supreme Court has not expressly embraced or rejected a constitutional right to intrastate travel, although it has cast doubt on whether such a right exists," citing *Memorial Hosp. v. Maricopa County*, 415 U.S. 250, 255-56 (1974) (citation omitted)).

goods for the health and well-being of him and his family" because he refuses to wear a mask. *Id*. at ¶ 61.[16]

The Second Circuit has made clear that Plaintiff's allegations do not implicate the constitutional right to move freely for at least two independent reasons. First, "[w]hile the parameters of th[e] right [to travel within a state] have not been sharply defined by our Court, it is clear that the right protects *movement between places* and has no bearing on *access* to a particular place." *Williams v. Town of Greenburgh*, 535 F.3d 71, 75 (2d Cir. 2008) (emphasis in *Williams*). "[I]t would distort the right to free travel beyond recognition to construe it as providing a substantive right to cross a *particular* parcel of land, enter a *chosen* dwelling, or gain admittance to a *specific* government building." *Id*. at 76 (emphasis in *Williams*). Therefore, this Court should dismiss Plaintiff's claims because they are based on his allegations that he was denied access to buildings, namely, courthouses[17] and stores. *See id*. (affirming the district

---

[16] The conclusory nature of Plaintiff's allegations independently supports dismissal. *See, e.g.*, *Iqbal*, 556 U.S. at 678. Plaintiff does not allege any facts concerning his exclusion from any courthouse or store. Nor does he allege that he had any in-court proceedings scheduled and requested—and was denied—accommodations by any court to allow him to conduct any necessary business virtually, or that he is unable to obtain goods from stores on-line or via curbside service.

[17] Plaintiff indicates that his inability to enter "courthouses, where the plaintiff plies his profession, without wearing a mask of some sort over his nose and mouth" impacts his "basic and fundamental right to earn a living." *2dAC*, ¶ 60. That appears to be part of Plaintiff's right to move freely claim. *See id*. at Count Two. To the extent, if any, Plaintiff's Complaint could be construed as pursuing a claim based on his right to earn a living that is independent from his right to move freely claim, any such claim could not survive this Motion to Dismiss. The Supreme Court has held that "'the right to conduct a business, or to pursue a calling, may be conditioned.'" *Columbus Ale House, Inc. v. Cuomo*, 2020 U.S. Dist. LEXIS 191828, at *11 (E.D.N.Y. Oct. 15, 2020) (quoting *New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*, 439 U.S. 96, 107 (1978)). Therefore, "'[t]his type of due process claim requires a showing that the plaintiff has been prevented from exercising his right' completely." *Id*. (quoting *Schultz v. Inc. Vill. of Bellport*, 479 F. App'x 358, 360 (2d Cir. 2012) (Summary Order)). Plaintiff does not allege that the mask requirement has completely prevented him from practicing law, nor could he credibly. There is no reason to believe (and no factual basis to conclude) that Plaintiff has somehow been unable "to conduct professional and personal business virtually or through the myriad of contactless options developed during the COVID-19 pandemic." *Vincent v. Lamont*, 2020 U.S. Dist. LEXIS 191941, at *19 (D. Conn. Oct. 16, 2020) (Bolden, J.).

court's dismissal of claims based on the plaintiff's denial of access to a municipal community center); *see also Vincent*, 2020 U.S. Dist. LEXIS 191941, at \*28-29 (applying *Williams* and holding that the plaintiff attorney's right to travel claims premised on courthouse access were not likely to succeed on their merits); *Village of Orland Park v. Pritzker*, 2020 U.S. Dist. LEXIS 136833, at \*28 (N.D. Ill. Aug. 1, 2020) (relying in part on *Williams* to reject challenges to a Governor's COVID-19 Orders and noting that if a right to intrastate travel exists, which is unclear in the Seventh Circuit, "it is unlikely that right includes access to private places of business, which appears to be Plaintiffs' underlying concern").

Second, the Orders' requirement that Plaintiff wear a mask in public when social distancing is not otherwise possible is not the type of impairment that would implicate the constitutional right to move freely. The right is implicated by impairments of an individual's "ability to drive, walk, or otherwise proceed" from place to place. *Id*. "[I]t has no bearing whatsoever" on whether a person who is free to drive, walk, or otherwise proceed from place to place has to wear a mask, clothing, or any other item while doing so. *Id*. "[M]inor restrictions on travel" such as being required to wear a mask "simply do not amount to the denial of a fundamental right." *Town of Southold v. Town of East Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) (quotation marks omitted); *see also Selevan v. New York Thruway Authority*, 711 F.3d 253, 258 (2d Cir. 2013) (reiterating that "minor restrictions on travel simply do not amount to the denial of a fundamental right"); *Vincent*, 2020 U.S. Dist. LEXIS 191941, at \*29 (finding that having to wear a mask under COVID-19 Order was an objectively minor restriction that could not establish a likelihood of success on a right to travel claim); *Peruta v. City of Hartford*, 2012 U.S. Dist.

LEXIS 120228, at *19 (D. Conn. Aug. 24, 2012) (Bryant, J.) (finding that "Courts have routinely held that reasonable fees or taxes on travel, including parking, do not impermissibly burden the constitutional right to travel" and citing cases).

The Orders do not implicate the right to travel and that requires dismissal of Plaintiff's claims in Count Two. Even if there were any doubt, the Orders would survive any potentially applicable level of scrutiny. "[S]trict scrutiny, requir[es] the [state] to show that the regulation is narrowly tailored to serve a compelling governmental interest." *Selevan*, 711 F.3d at 257-58 (quotation marks omitted). "'[States] undoubtedly ha[ve] a compelling interest in combating the spread of COVID-19 and protecting the health of [their] citizens.'" *Luke's Catering Service, LLC v. Cuomo*, 2020 U.S. Dist. LEXIS 165907, at *18 (W.D.N.Y. Sep. 10, 2020) (quoting *S. Bay*, 140 S. Ct. at 1614 (Kavanaugh, J., dissenting from denial of application for injunctive relief)). The mask requirement is narrowly tailored to serve that compelling interest; it involves only an objectively minor imposition, applies only when individuals are in public and cannot otherwise socially distance, and is consistent with the "common belief . . . maintained by high medical authority" that masks help reduce the spread of COVID-19. *Jacobson*, 197 U.S. at 30.

Plaintiff apparently disagrees with that common belief that masks help to slow the spread of COVID-19 and the high medical authorities (including the CDC) that hold that belief, but *Jacobson* makes clear this Court "must assume" that the Governor was aware "of these opposing theories and was compelled, of necessity, to choose between them." *Jacobson*, 197 U.S. at 30. The Constitution recognizes that was the Governor's choice to make and the Supreme Court has held that "[i]t is no part of the function of a court or a jury to determine which one of two modes

[here, masks or no masks] was likely to be the most effective for the protection of the public against disease." *Id*.; *cf. Maxwell v. City of New York*, 1995 U.S. Dist. LEXIS 5467, at *21-24 (S.D.N.Y. Apr. 25, 1995) (rejecting a right to travel challenge to a police checkpoint under strict scrutiny, holding that the restriction at issue was minor relative to those that had supported claims, that the area at issue was impacted by crime, and that the checkpoint furthered "one of the basic purposes of government" to maintain public safety).

### F. This Court Should Dismiss Plaintiff's Right to Personal Medical Decisions Claim

Count Three is titled Violation of the Constitutional Right to Personal Medical Decisions. No constitutional right with that specific nomenclature appears to have been discussed—let alone recognized—in any federal case. In the body of Count Three, Plaintiff also refers to violations of claimed "right[s] to control over his own body and that [sic] of his children, to breathe freely, to remain healthy, and to due process, by restricting his access to fresh air." *2dAC*, ¶ 70. There do not appear to be any federal cases recognizing a constitutional right to control one's body or the bodies of one's children[18], to breathe freely, or to remain healthy in such terms.

Some courts (apparently a minority) have recognized a "constitutional right to fresh air and regular outdoor exercise" in the prison context as a component of the Eighth Amendment. *Rhoden v. Mayberg*, 2010 U.S. Dist. LEXIS 88085, at *4 (E.D. Cal. Aug. 26, 2010). That does not help Plaintiff avoid dismissal here. Although the Second Circuit has recognized a right to

---

[18] To be clear, the constitutional right of privacy Plaintiff invokes in Count Four is recognized and does relate in some senses to personal medical decisions, control over one's body, and the ability to make decisions for one's children. Therefore, it appears that Plaintiff's allegations in Count Three that would implicate the right to privacy should be read as being subsumed in Count Four and that this Court should dismiss Count Three.

exercise in the prison context, even in that context (not present here), this Court—and other courts in this Circuit[19]—have held that "there is no constitutional right to outdoor recreation." *Shakur v. Sieminski*, 2009 U.S. Dist. LEXIS 60796, at *13 (D. Conn. July 15, 2009) (Droney, J.) (citing cases); *see also Huggins v. Schriro*, 2015 U.S. Dist. LEXIS 156848, at *16 (S.D.N.Y. Nov. 19, 2015) (following *Shakur* and holding that a prisoner did "not have a right to outdoor exercise"); *Davidson v. Coughlin*, 968 F. Supp. 121, 130 (S.D.N.Y. 1997) ("Although the Court of Appeals for the Second Circuit has held that one hour of outdoor exercise per day comports with the requirements of the Eighth Amendment, it did not adopt that amount as a constitutional minimum. Indeed, no court has adopted any such constitutional minimum.").

That should be fatal to Plaintiff's claims. Courts in this Circuit have held there is no constitutional right to outdoor recreation and, by extension, fresh air even when the government has exerted complete control over an individual's ability to be outdoors. The Governor has not located any case that would allow Plaintiff's claim to even arguably survive this Motion to Dismiss. Plaintiff does not allege any claims based on the Eighth Amendment, nor could he credibly. And, even if he did and this Court were inclined to recognize a right to be outdoors (contrary to *Shakur*), the Orders are nowhere near the type of restriction that would implicate any constitutional right to fresh air that could exist. *See Bryant v. Capra*, 2020 U.S. Dist. LEXIS 16725, at *31 (S.D.N.Y. Jan. 30, 2020) (finding that "[c]laims involving alleged denial of

---

[19] Courts outside this Circuit have reached the same conclusion. *See, e.g., Wilson v. Warden Brown*, 2020 U.S. Dist. LEXIS 181802, at *20 n.14 (W.D. La. Sep. 9, 2020) ("Our cases have never held that convicted prisoners have a constitutional right to outdoor exercise." (quoting *Jones v. Diamond*, 594 F.2d 997, 1013 (5th Cir. 1979), *on reh'g*, 636 F.2d 1364 (5th Cir. 1981)); *Townsend v. Ferrey*, 2005 U.S. Dist. LEXIS 9731, at *11 (W.D. Wis. May 18, 2005) ("Petitioner has no constitutional right to daylight, fresh air or outdoor exercise.").

outdoor exercise and recreation often fall short of the Eighth Amendment standard for a conditions of confinement claim" and citing cases). Plaintiff is free to enjoy the outdoors without a mask and to breathe fresh air for as much time as he wants, he just needs to wear a mask in situations where he cannot maintain social distance from other people. That requirement does not violate the Constitution. Therefore, this Court should dismiss Count Three.

### G.  This Court Should Dismiss Plaintiff's Right to Privacy Claim

Count Four is titled Violation of the Constitutional Right to Privacy. Plaintiff alleges that he has a "right to choose whether and what to wear upon his person generally, and especially over his life-giving airways," *2dAC*, ¶ 66, and "a basic and natural right to breathe unabated and unencumbered by a mask of any kind." *Id*.  at ¶ 67. As pertains to this argument, Plaintiff alleges this right finds its source in "the penumbra of rights enumerated in the Bill of Rights generally, and specifically of the 5th, 9th and 14th Amendments to the U.S. Constitution." *2dAC*, ¶ 69.[20]

The constitutional right to privacy finds its primary source in substantive Due Process, and the Supreme Court has "establish[ed] a threshold requirement" for substantive Due Process claims that the plaintiff show that the "challenged state action implicate[s] a fundamental right" or liberty interest. *Washington v. Glucksberg*, 521 U.S. 702, 722 (1997). That threshold requirement necessitates "a careful description of the asserted fundamental liberty interest." *Id*. at 721 (quotation marks omitted). "The cases sometimes characterized as protecting 'privacy' have in fact involved at least two different kinds of interests. One is the individual interest in avoiding

---

[20] Plaintiff also bases this Count on "the penumbra of rights enumerated in the . . . 5th [and] 9th . . . Amendments to the U.S. Constitution, and Article 1st, §§8 and 10 of the Connecticut Constitution." *2dAC*, ¶ 75. However, as discussed above, the Fifth and Ninth Amendments cannot form proper bases for Plaintiff's claims in this case, and this Court lacks jurisdiction over Plaintiff's claims under the Connecticut Constitution.

disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Whalen v. Roe*, 429 U.S. 589, 598–600 (1977). Plaintiff cannot properly rely on either interest to avoid dismissal here.

It does not appear that Plaintiff claims the Orders implicate the first kind of privacy "interest in avoiding disclosure of personal matters." *Id*. To the extent Plaintiff does, this Court should dismiss his claim. The Orders "do not attempt to intrude in such places that would be considered to be within a person's sphere of privacy, such as in a private residence, automobile, hotel room, or private social event, and thus, do not ruffle the implied right of privacy in the 'penumbras' of the Bill of Rights." *NYC C.L.A.S.H., Inc. v. City of New York*, 315 F. Supp. 2d 461, 479 n.13 (S.D.N.Y. 2004) (quoting *Griswold v. Connecticut*, 381 U.S. 479, 484–85 (1965)). Plaintiff alleges no facts to the contrary, nor could he credibly.

It appears that Plaintiff bases his claim in Count Four on the second type of federal constitutional privacy interest, namely, "the interest in independence in making certain kinds of important decisions." *Whalen*, 429 U.S. at 599. In *Whalen*, the Court characterized those "important decisions" as "dealing with matters relating to marriage, procreation, contraception, family relationships, and child rearing and education."  *Id*. at 600 n.26 (quotation marks omitted). The Court has since expanded that list of decisions outside the family context by recognizing that individuals have a Due Process-protected liberty interest "in refusing unwanted medical treatment" in the context of deciding whether to die. *Cruzan by Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 278 (1990).

But the Court's "precedent makes clear that not every decision relating to the body or bodily integrity is sufficiently intimate and personal to merit enhanced protection" under the right to privacy. *New York State Ophthalmological Soc. v. Bowen*, 854 F.2d 1379, 1391 (D.C. Cir. 1988) (citing cases). That requires dismissal of Plaintiff's claim.

Plaintiff's desire not to wear a mask does not rise to the level of an "important decision[ ]" that gives rise to a constitutional privacy interest. *Whalen*, 429 U.S. at 600 n.26. Put differently, the facts Plaintiff alleges show that his decision not to wear a face-covering "is insufficiently consequential to merit a high level of protection from governmental interference." *Bowen*, 854 F.2d at 1391. Notably, Plaintiff does not allege that he has a medical condition that precludes him from wearing a mask. If Plaintiff did have (and properly document) such a condition, he would be exempt from the requirement. *See 2dAC*, ¶ 5 (quoting Exhibit F, p. 7).

Instead, Plaintiff references a study of "pregnant health care workers" who wore "N95-mask[s] during exercise" that found that they had reduced oxygen intake, *2dAC*, ¶ 43, and— apparently based on that study—alleges that wearing a face-covering that complies with the Orders will somehow "damage" Plaintiff's "health." *Id*. at ¶ 49. Those allegations should not be enough to survive this Motion to Dismiss. Plaintiff does allege that he is pregnant. Nor do the Orders require Plaintiff to wear a N95 mask, either while exercising or otherwise. Put simply, Plaintiff (like many of us) would prefer not to have to wear a mask when he is in public in close proximity with other people, but the decision of whether to do so is not on a constitutional par with deciding whether to have a child or get married. *See Whalen*, 429 U.S. at 600 n.26.

In any event, even if Plaintiff's Second Amended Complaint implicated the constitutional right to privacy (it does not), "Courts considering alleged violations of the right to privacy employ a rational basis review." *Benedith v. Malverne Union Free Sch. Dist.*, 38 F. Supp.3d 286, 329 (E.D.N.Y. 2014). "In other words, the inquiry is whether the state action complained of has a 'reasonable relationship' to a legitimate state interest." *See id.* (citing *Meyer v. Nebraska,* 262 U.S. 390, 403 (1923), *Wisconsin v. Yoder,* 406 U.S. 205, 233–34 (1972), and *Pierce v. Society of the Sisters of the Holy Names of Jesus and Mary,* 268 U.S. 510, 534–35 (1925)). The Orders easily satisfy that standard; the "common belief . . . maintained by high medical authority" is that masks help reduce the spread of COVID-19, *Jacobson*, 197 U.S. at 30, and Connecticut "undoubtedly has a compelling interest in combating the spread of COVID-19 and protecting the health of its citizens." *S. Bay*, 140 S. Ct. at 1614 (Kavanaugh, J., dissenting from denial of application for injunctive relief).

### H. This Court Should Dismiss Plaintiff's Complaint to the Extent it is Based on the Requirement that Plaintiff's Children Wear Masks

Charitably read, Count Three's references to Plaintiff's "right to control over" the bodies "of his children" and to make "health decisions . . . for his children," *2dAC*, ¶ 70, could be construed as making claims based to the aspect of the constitutional right to privacy that applies to "matters relating to . . . child rearing and education." *Whalen*, 429 U.S. at 600 n.26 (referencing cases including *Pierce v. Society of Sisters*, 268 U.S. 510 (1925) and *Meyer v. Nebraska*, 262 U.S. 390 (1923)). This Court should dismiss any such claims.

Plaintiff's right is based in substantive Due Process and "substantive due process does not protect against all perceive[d] infringement[s] of valid liberty . . . interests (even those that are incorrect or ill-advised), but rather only against those that are 'arbitrary, conscious-shocking, or oppressive in a constitutional sense.'" *Ass'n of Jewish Camp Operators v. Cuomo*, 2020 U.S. Dist. LEXIS 117765, at *51 (N.D.N.Y. July 6, 2020) (quoting *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995)). That is a high standard and Plaintiff's allegations do not come close to meeting it.

Indeed, it is unclear whether actions like the Governor's taken in response to a deadly pandemic could ever meet that standard; a court recently faced with claims similar to Plaintiff's during the COVID-19 pandemic noted that it "finds the notion that restrictions designed to save human lives are 'conscious shocking' to be absurd and not worthy of serious discussion." *Herrin v. Reeves*, 2020 U.S. Dist. LEXIS 176604, at *23 (N.D. Miss. Sep. 25, 2020). The Second Circuit has similarly recognized that government actions taken in response to an unprecedented emergency will rarely—if ever—support a substantive Due Process claim that will survive a motion to dismiss. *See, e.g.*, *Lombardi v. Whitman*, 485 F.3d 73, 82–83 (2d Cir. 2007).

In *Whitman*, the Court rejected substantive Due Process claims brought by plaintiffs who "performed search, rescue and clean-up work at the World Trade Center site . . . in the aftermath of the September 2001 terrorist attacks" and who alleged that "federal officials, issued reassuring—and knowingly false—announcements about the air quality in lower Manhattan." *Id.* at 74. Those false statements led the plaintiffs "to work at the site without needed respiratory protection" and harmed their health. *Id.* In affirming the dismissal of the plaintiffs' claims, the

32

Court reasoned that "the complaint's allegations d[id] not shock the conscience even if the defendants acted with deliberate indifference: when agency officials decide how to reconcile competing governmental obligations in the face of disaster, only an intent to cause harm arbitrarily can shock the conscience in a way that justifies constitutional liability." *Id.* at 74-75.

The Second Circuit's logic in *Whitman* applies with even greater force here. In contrast to Plaintiff, the plaintiffs in *Whitman* alleged facts that clearly implicated their substantive Due Process right to bodily integrity; they were forced to breathe "with little or no equipment to protect their lungs" in an area filled "with concrete dust, asbestos, lead, and other building materials" and near "[f]ires within the wreckage [that] burned for months, emitting various metals and particulate matter in addition to such potentially harmful substances as dioxin, polychlorinated biphenyls (PCBs), volatile organic compounds (VOCs), and polycyclic aromatic hydrocarbons (PAHs)." *Id.* at 75, 79. Even so, the Second Circuit held that the defendants' allegedly knowingly false statements that led to physical harm to the plaintiffs did not shock the conscience for substantive Due Process purposes. That was because "[t]he conscience recognizes the dilemma of conflicting obligations. In the apparent absence of harmless options at the time decisions must be made, an attempt to choose the least of evils is not itself shocking." *Id.* at 82.

The *Whitman* defendants had to balance the plaintiffs' safety against the "essential government function in the wake of disaster . . . to put the affected community on a normal footing, *i.e.*, to avoid panic, keep order, restore services, repair infrastructure, and preserve the economy." *Id.* at 83. Under those circumstances, "the allocation of risk may be a burden on the

33

conscience of the one who must make such decisions, but does not shock the contemporary conscience" for substantive Due Process purposes. *Id*. at 85.

The same is true here. "[I]n the § 1983 context, courts should operate from a 'presumption that the administration of government programs is based on a rational decisionmaking process that takes account of competing social, political, and economic forces.'" *Id*. at 84 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992)). The Governor has been faced with the "dramatic challenge" that is "presented by COVID-19, a novel and easily transmitted viral disease that has prompted a rapid reorientation of workplace practices and social life in support of public health." *Fed. Defs.*, 954 F.3d at 126. Under such circumstances, "substantive due process liability should not be allowed to inhibit or control policy decisions of government agencies, even if some decisions could be made to seem gravely erroneous in retrospect." *Whitman*, 485 F.3d at 84.

To be clear, Plaintiff does not—and could not credibly—allege facts that would support a conclusion that the Governor's Orders requiring masks (for either Plaintiff or his children[21]) are either gravely erroneous or constitutionally arbitrary. Rather, Plaintiff wants this Court to "second-guess[ ]" the Governor's response to "COVID–19, a novel severe acute respiratory

---

[21] The Second Circuit has held that "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." *Cheung v. Youth Orchestra Foundation, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990). Although Plaintiff is proceeding *pro se*, he is an attorney and therefore is not categorically barred from representing his children. However, the Court should still be alert to potential conflicts between Plaintiff's interests and those of his children to the extent Plaintiff purports to act on behalf of his children. *Cf. Rizzuto v. De Blasio*, 2019 U.S. Dist. LEXIS 54457, at *24-32 (E.D.N.Y. Mar. 29, 2019) (granting a motion to disqualify a father from representing his son, based in part on a conflict of interests). Here, there are reasons to doubt whether eliminating the mask requirement in the school Plaintiff's children attend would be in their best interests and there is no basis to assess whether Plaintiff's minor children have another custodial parent and, if so, whether that parent agrees with Plaintiff that removing the mask requirement would be in the best interests of their children.

illness," with which people "may unwittingly infect others," and for which "there is no known cure, no effective treatment, and no vaccine" and agree with the Plaintiff's assessment. *S. Bay*, 140 S. Ct. at 1613. Substantive Due Process is not a proper constitutional vehicle for such second-guessing and this Court should dismiss Plaintiffs' claims.[22]

## I. This Court Should Dismiss Plaintiff's Complaint to the Extent it Claims Unconstitutional Vagueness and/or Overbreadth

Plaintiff alleges that "[a]s C.G.S. 19a-131 et seq. and §28-9(b) in general, and subsection (7) thereof in particular, are being applied to the plaintiff, they are unconstitutionally vague and overbroad and violate the right to due process." *2dAC*, ¶ 86. Plaintiff misconceives the nature of vagueness and overbreadth challenges.

The vagueness doctrine reflects the "fundamental principle in our legal system . . . that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). The primary problem with Plaintiff's vagueness claim is that the state statutes on which he bases his claim neither forbid Plaintiff from doing anything nor require him to do anything. Rather, the statutes grant the Governor the authority to issue Orders regulating persons or entities during an emergency. *See, e.g.*, Conn. Gen. Stat. § 28-9(b)(7) (providing that "[t]he Governor may take such other steps as are reasonably necessary in the light of the emergency to protect the health, safety and welfare of the people of the state, to prevent or minimize loss or destruction of property and to minimize the effects of hostile action").

---

[22] To be clear, this analysis applies to (and requires dismissal of) any and all substantive Due Process claims Plaintiff's Complaint may be construed as asserting based on the mask Orders' impacts on Plaintiff and/or his children, not only the claim in Count Three.

The gravamen of Plaintiff's vagueness claim appears to be that the mask Orders the Governor issued were outside the scope of the authority the General Assembly granted the Governor in the state statutes Plaintiff cites. That is a claim that the Governor acted *ultra vires* under Connecticut law and—as discussed above—"this Court lacks jurisdiction over Plaintiff['s] *ultra vires* claim under the Eleventh Amendment of the U.S. Constitution." *Auracle*, 2020 U.S. Dist. LEXIS 141500, at *33; *see also Pennhurst*, 465 U.S. at 106 (holding that the Eleventh Amendment bars claims where "a plaintiff alleges that a state official has violated *state* law" (emphasis in *Pennhurst*)). The Governor does not believe Plaintiff's Complaint reasonably can read as alleging that the mask Orders themselves are vague, but (if it could) any such claim could not survive dismissal—the mask Orders are clear, Plaintiff does not allege facts that indicate he is at all confused about what they require, and any such allegations would not be credible. *See, e.g.*, *Givens v. Newsom*, 2020 U.S. Dist. LEXIS 81760, at *23-26 (E.D. Cal. May 8, 2020) (holding that a vagueness challenge to a Governor's COVID-19 Order was unlikely to succeed); *Hartman* v. *Acton*, 2020 U.S. Dist. LEXIS 72068, at *14-17 (S.D. Ohio Apr. 21, 2020) (reaching a similar conclusion as to a COVID-19 Order by the Director of the Department of Health).

Plaintiff's stray reference to overbreadth likewise cannot allow him to avoid dismissal. As an initial matter, overbreadth is generally a First Amendment principle and the Orders do not implicate the First Amendment for the reasons discussed above. *See, e.g.*, *Antietam Battlefield KOA*, 2020 U.S. Dist. LEXIS 88883, at *31-32. Moreover, the Supreme Court has "recognized that the overbreadth doctrine is strong medicine and ha[s] employed it with hesitation, and then only as a last resort." *Los Angeles Police Dept. v. United Reporting Publishing Corp.*, 528 U.S.

36

32, 39 (1999) (quotation marks omitted). Plaintiff has come nowhere near meeting his overbreadth burden here; by their nature, the mask Orders work best with broad compliance, and they contain a medical exception to protect those who can show that wearing a mask will harm them for a medical reason. *See 2dAC*, ¶ 5 (quoting Exhibit F, p. 7).

### J.  Even if Any of Plaintiff's Claims Could Survive Dismissal Under Traditional Analysis, None Can Survive Under *Jacobson* Analysis

Plaintiff's Complaint fails to state a claim under traditional analysis, and this Court can—and should—dismiss it in its entirety without having to rely on the "'especially broad'" latitude the Constitution grants the Governor in responding to the pandemic. *S. Bay*, 140 S. Ct. at 1613 (quoting *Marshall*, 414 U.S. at 427). But the Supreme Court and the Second Circuit have made clear that the Governor has that latitude. *See, e.g.*, *Liberian Community Assn. of Connecticut*, 970 F.3d at 189-90 (discussing *Jacobson*). Consistent with that appellate precedent, this Court has "join[ed] the numerous other federal courts in relying on *Jacobson* to reject similar constitutional claims brought by plaintiffs challenging similar COVID-19 restrictions in other states." *Murphy*, 2020 U.S. Dist. LEXIS 136961, at *42 (citing case, which—in turn—cited other cases).

In *Murphy*, this Court found that "the nation's top medical professionals have urged the use of face masks and coverings" and "conclude[d] that Executive Order 7BB, which require[d] the use of face coverings in public spaces where six feet distance cannot be maintained, ha[d] a 'substantial relation' to the state's goal of curbing the spread of the virus." *Id*. at *27 (quoting

*Jacobson*, 197 U.S. at 31). Therefore, the plaintiffs' claims challenging the mask requirement were not likely to succeed. *See id.* at \*28.[23]

The same logic requires that this Court dismiss Plaintiff's claims here. Although Plaintiff believes that masks are "inappropriate or ineffective," the weight of the "scientific evidence supports the opposite conclusion." *Id.*; *see also* (A-13-25).[24] The Constitution requires this Court to "grant wide latitude to elected officials acting under these circumstances." *Id.* (citing *S. Bay*, 140 S. Ct. at 1613). The Governor's actions were well within that wide latitude; the CDC and (according to a recent analysis) all 50 states, the District of Columbia, and Puerto Rico have issued mask requirements or recommendations. (A-26-63).[25]

There is no way to conclude that the Governor exceeded the wide latitude the Constitution grants him when his actions are broadly consistent with those recommended by the CDC and implemented by every other Governor. Put differently, since the use of masks "as a means of protecting a community against" COVID-19 "finds strong support in the experience of this and other countries, no court, much less a jury, is justified in disregarding the action of the

---

[23] Every case the Governor's research uncovered denied relief at the preliminary stage of challenges to COVID-19 mask Orders. *See, e.g.*, *Vincent v. Lamont*, 2020 U.S. Dist. LEXIS 191941, at \*1-34 (D. Conn. Oct. 16, 2020) (Bolden, J.); *Hayes v. Oregon*, 2020 U.S. Dist. LEXIS 144813, at \*4-9 (D. Or. Aug. 12, 2020); *Lindoo v. Evers*, 2020-CV-219 (Wis. Cir. Oct. 12, 2020) (A-67); *Machovec v. Palm Beach*, 2020-CA-6920 (Fl. Cir. July 27, 2020); *Munza v. Ivey*, CV-2020-900935.00 (Al. Cir. July 26, 2020) (A-70); *Schilling v. Northam*, 2020 Va. Cir. LEXIS 120, at \*11 (July 20, 2020); *Cooper v. Sununu*, 2020-CV-002266 (N.H. Sup. Ct. July 13, 2020) (A-71); *Strother v. Northam*, 2020 Va. Cir. LEXIS 106, at \*18 (June 29, 2020).

[24] This Court may properly take judicial notice of the material in the Governor's Appendix in deciding this Motion to Dismiss. *See, e.g.*, *Abdin v. CBS Broadcasting, Inc.*, 971 F.3d 57, 2020 U.S. App. LEXIS 25956, at \*3 n.2 (2d Cir. 2020) (affirming the district court's grant of a motion to dismiss, and noting that "[t]he district court properly took judicial notice of the publications discussed herein, . . . not necessarily for the truth of the matter asserted, but for the publication of such information and relevant discussion in the scientific community"); *see also Gentry v. Carvajal*, 2020 U.S. Dist. LEXIS 121117, at \*9 (S.D. Ill. July 10, 2020) (taking judicial notice of CDC material in deciding a COVID-19 motion to dismiss).

[25] In addition to Connecticut, 41 states, the District of Columbia, and Puerto Rico are listed as requiring masks, while 8 states recommend them (A-26-63).

[state] simply because in its or their opinion that particular method was—perhaps or possibly—not the best either for children or adults." *Jacobson*, 197 U.S. at 35.

That requires dismissal of Plaintiff's claims in their entirety; *Jacobson* applies to "*all* constitutional rights.*" *In re Abbott*, 954 F.3d 772, 786 (5th Cir. 2020) (emphasis in the original). Plaintiff apparently believed at the time he filed his Second Amended Complaint that Connecticut was no longer at risk from COVID-19, but, as another Court noted in rejecting a similar argument,

> What is particularly worrisome is the recent dramatic rise in COVID-19 cases and deaths in several other states, which provides ample warning that a momentary decrease in the daily rate of infection does not mean that it cannot increase in the future in New York State if the conditions imposed by Defendant's executive orders are not sufficiently followed.

*Ass'n of Jewish Camp Operators*, 2020 U.S. Dist. LEXIS 117765, at *24. Since Plaintiff predicted that the "pandemic curve ha[d] reached its nadir,"[26] COVID-19 has reportedly surged in many areas and reached the President himself. (A-66). Ultimately, the Constitution grants the Governor—not Plaintiff—the authority and the duty to decide whether, and when, it is safe for people in Connecticut to stop wearing masks to protect themselves and others. This Court's recent finding in the context of another challenge to the Governor's mask Orders applies with equal force here; "[t]here is nothing in" Plaintiff's Second Amended Complaint "to suggest that the efforts of Governor Lamont . . . thus far should be second-guessed, much less" subjected to intervention by this Court. *Vincent*, 2020 U.S. Dist. LEXIS 191941, at *35.

---

[26] *2dAC*, ¶ 49.

**V.**      **Conclusion**

For the foregoing reasons, the Governor respectfully requests that this Court grant this

Motion and dismiss Plaintiff's Second Amended Complaint in its entirety.

Respectfully submitted,

DEFENDANT

WILLIAM TONG
ATTORNEY GENERAL

BY: */s/ Robert J. Deichert*
Robert J. Deichert (ct24956)
Assistant Attorney General
Attorney General's Office
165 Capitol Avenue
Hartford, CT 06106
860-808-5020 (phone)
860-808-5347 (fax)
Robert.Deichert@ct.gov
*Attorney for Defendant*

**<u>Certificate of Service</u>**

I hereby certify that on October 19, 2020, a copy of the foregoing was electronically filed. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Robert J. Deichert*
Robert J. Deichert
Assistant Attorney General
