UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Lindy URSO   *Plaintiff*, | ) 3:20-CV-00529 (KAD) ) ) |
| v. | ) ) |
| His Excellency, Governor Ned LAMONT,   *Defendant*. | ) ) ) DECEMBER 15, 2021 |

<u>**MEMORANDUM OF DECISION**</u>
**RE: DEFENDANT'S MOTION TO DISMISS & PLAINTIFF'S MOTION FOR LEAVE TO AMEND, ECF Nos. 27 & 36**

Kari A. Dooley, United States District Judge:

This case arises out of Defendant Governor Ned Lamont's ("the Governor") response to the COVID-19 pandemic. Alleging that his substantive due process right to breathe freely has been violated by a series of the Governor's executive orders—those that have colloquially become known as "mask mandates"—Plaintiff Lindy Urso ("Plaintiff") sued the Governor seeking injunctive and declaratory relief. Plaintiff maintains that his substantive due process rights have been and continue to be violated by the Governor's orders.

Pending before the Court are the Governor's Motion to Dismiss, ECF No. 27, and Plaintiff's Motion for Leave to Amend, ECF No. 36. For the reasons set forth below, the Governor's Motion to Dismiss is GRANTED, and Plaintiff's Motion for Leave to Amend is DENIED.

**Procedural History**

The start and stop progress of this case has been dictated, in part, by the impermanent nature of the Governor's executive orders.[1] Plaintiff first brought this action on April 18, 2020

---

[1] Unless otherwise stated, every citation to an executive order in this decision references an order issued by Governor Ned Lamont. At the time of decision, the Governor's executive orders were available at: https://portal.ct.gov/Office-of-the-Governor/Governors-Actions/Executive-Orders/Governor-Lamonts-Executive-Orders. The record contains

seeking (1) a declaratory judgment finding that Executive Order No. 7BB was unconstitutional and void; (2) a declaratory judgment declaring Conn. Gen. Stat. § 28-9(b)(7) unconstitutional and void; and (3) an order permanently enjoining the Governor from enforcing Executive Order No. 7BB. (Compl., ECF No. 1.) On May 20, 2020 and before the Governor filed a response, Plaintiff amended his complaint to also account for Executive Order No. 7PP, which the Governor signed on May 18, 2020, and Executive Order No. 7V, which had been previously signed on April 7, 2020. Plaintiff also amended his complaint to ask for a declaration that Conn. Gen. Stat. §§ 19a-131 *et seq.* and § 28-9, or portions thereof, be declared unconstitutional and void. (First Am. Compl., ECF No. 7.)

Plaintiff served the Governor on July 9, 2020. (ECF No. 8.) Following a series of motions directed to the procedural posture of the case, on August 28, 2020 the Court granted, on consent, the Governor's motion to stay discovery pending adjudication of the then anticipated motion to dismiss by the Governor. (ECF No. 16.)

On September 9, 2020, Plaintiff, citing a need to update the pleadings following the Governor's issuance of new and updated executive orders, filed a motion for leave to amend the amended complaint. (ECF No. 17.) The Court granted the motion for leave to amend and directed the Plaintiff to file the Second Amended Complaint ("SAC") by September 18, 2020. The Court also ordered the Governor to respond to the SAC by October 16, 2020. (ECF No. 18.) Though not timely, the Court permitted the SAC to be filed on September 25, 2020. (ECF No. 23.) Substantively, the SAC was addressed to the then-current Executive Orders Nos. 7V, 7PP, and 7NNN and included updated exhibits. (ECF No. 21.)

---

copies of all executive orders except for Executive Order No. 13A and Executive Order No. 14A, both of which were published after briefing on this motion was complete.

The Governor responded with the instant motion to dismiss on October 19, 2020. (ECF No. 27.) Thereafter, the Governor's orders and response to the COVID-19 pandemic continued to evolve, and the Court convened a telephonic status conference on April 30, 2021, in part, to determine whether the Plaintiff's claims had been rendered moot by the changing landscape. (ECF Nos. 31–32.) During the conference, the parties acknowledged that the change in circumstances, to include the scope and substance of the executive orders, may implicate mootness with respect to some of Plaintiff's claims. Plaintiff also confirmed, consistent with his briefing, that he had abandoned all of his claims except a substantive due process claim arising out of the then-current mask mandate in Executive Order No. 7NNN. The Court then scheduled oral argument on the motion to dismiss for June 9, 2021. (ECF No. 33.)

On June 4, 2021, the Governor filed a notice of supplemental authority in anticipation of the oral arguments. (ECF No. 35.) Therein, the Governor noted that Executive Order No. 7V had expired on April 19, 2021, Executive Order No. 7NNN had been repealed on May 18, 2021, and Executive Order No. 7PP had been superseded on April 19, 2021. The Governor also noted that Executive Order No. 12A was the then operative order regarding the wearing of masks, and that this order was set to remain in effect through July 20, 2021 unless earlier terminated or modified. Although the Governor did not advance any arguments as to the import of these events for the SAC, the Governor observed that the Plaintiff had taken no steps to further amend the complaint to address the updated executive orders. Finally, the Governor provided the Court with a number of cases that had since been resolved dealing with similar mask mandates in other states.

On June 8, 2021, the day before the scheduled hearing, Plaintiff filed a motion for leave to amend the SAC, citing the changes to the Governor's executive orders and the need for Plaintiff to update the operative complaint. (ECF No. 36.) Attached to the motion was Plaintiff's Proposed

Third Amended Complaint ("PTAC"). Given Plaintiff's eleventh-hour motion to amend, the Court convened the previously scheduled hearing via Zoom on June 9, 2021. (ECF No. 37.) At the hearing, the Governor represented that all (or at least most) of the arguments advanced in his motion to dismiss would have equal application to any amended complaint. The Court concluded that the most efficient path forward in light of the ever-changing landscape was for the Governor to file an opposition to Plaintiff's motion for leave to amend advancing whatever arguments he deemed appropriate and for the Plaintiff to file a reply once the opposition was received. The Court also stated that it would set a new date for oral arguments once it reviewed the parties' submissions concerning Plaintiff's motion for leave to amend as presumably, at that point, all issues would be properly joined and fully briefed.

The Governor filed his opposition to Plaintiff's motion for leave to amend on June 29, 2021; Plaintiff filed his reply on July 19, 2021. (ECF Nos. 38–39.) Oral argument was scheduled for September 22, 2021. (ECF No. 40.) On September 21, 2021, the Governor once again submitted a notice of supplemental authority indicating, among other things, that the then current operative order regarding mask wearing was Executive Order No. 13A and providing several more recently decided mask-mandate cases.[2]

The Court heard oral arguments on September 22, 2021 and took both the Governor's motion to dismiss and Plaintiff's motion for leave to amend under advisement.

**Allegations in the Proposed Third Amended Complaint**

Plaintiff alleges that the Governor has encroached on his individual liberties and freedoms by issuing Executive Order No. 12A, which "provides in pertinent part that: 'any person while indoors in a public place who does not maintain a safe social distance of approximately six feet

---

[2] Executive Order No. 13A has since been extended through February 15, 2022 by Executive Order No. 14A, which was issued on September 30, 2021.

4

from every other person and who is not fully vaccinated for COVID-19 shall cover their mouth and nose with a mask or cloth face cover.'" [3] (PTAC ¶¶ 1–2, 18 (quoting Executive Order 12A).) Plaintiff also alleges that this same executive order provides the Commissioner of Education with the authority to order that masks be worn at all times in school. (*Id.* ¶ 2.) The Governor's executive order was issued following the Governor's declaration of a public emergency, pursuant to Conn. Gen. Stat. §§ 19-131a and 28-9, and the Governor has sought extensions to the declaration since that time. (*Id.* ¶ 8–9.) The Governor's efforts began on March 12, 2020, when he issued "the first of dozens of Executive Orders." (*Id.* ¶ 17.)

Plaintiff then sets the factual foundation of his case against the Governor's order. He alleges: "There is no reason to believe that requiring healthy, uninfected people to wear surgical or cloth masks will do anything to prevent them from being infected with COVID-19 or prevent others from being so infected" (*Id.* ¶ 40.); and "[t]here is no evidence that COVID-19 is being spread in supermarkets, other retail outlets, business offices, or in public." (*Id.* ¶ 14.) In later sections, Plaintiff cites to various sources supporting these assertions as well as sources that call into question the accuracy of the Governor's public statements about the severity of the COVID-19 pandemic and its impact on Connecticut. (*Id.* ¶¶ 21–42.) Plaintiff also engaged in "re-lettering of existing Exhibits," and though no exhibits were attached to the PTAC, the Court assumes that Plaintiff is referencing the twenty-two exhibits attached to the SAC.

---

[3] As discussed elsewhere, Executive Order No. 13A has replaced 12A, but the language in paragraph 1 of both is essentially the same. Executive Order No. 13A merely replaces "any person" with "a person." Consequently, the two orders are not materially different, and any differences between the two do not impact the Court's analysis or decision. Further, for the purposes of this decision, the Court presumes that, if granted leave to amend, Plaintiff would update his complaint to address Executive Order No. 13A. If he did not and instead decided to proceed with his proposed amended complaint, which is addressed to the repealed Executive Order No. 12A, then his claims would be moot, as an injunction against enforcement of a repealed order would redress no injury. *See New York State Rifle & Pistol Ass'n, Inc. v. City of New York*, 140 S. Ct. 1525, 1526 (2020).

5

Plaintiff articulates several specific examples of being forced to wear a mask in the PTAC. He alleges that "because of the defendant's mask orders, [Plaintiff] is not being allowed to enter courthouses, where the plaintiff plies his profession, without wearing a mask of some sort over his nose and mouth." (*Id.* ¶ 56.) Plaintiff also avers that he has "been denied entry to any drug store or grocery market to obtain necessary goods for the health and well-being of him and his family since the defendant's orders requiring that stores require customers to wear masks went into effect." (*Id.* ¶ 57.) Plaintiff elsewhere asserts that he is "barred from entering his children's school without a mask." (*Id.* ¶ 19.)

Finally, Plaintiff alleges that "there is evidence that wearing a protective device actually inhibits oxygen intake and increases ingestion of carbon dioxide" (*Id.* ¶ 39.); "there is no compelling, legitimate or rational reason for these restrictive airway-blocking measures, as they will have little or no positive effect – and could in fact harm the plaintiff and others " (*Id.* ¶ 44.); and "wearing a surgical mask or home fashioned cloth covering over his nose and mouth will restrict and interfere with the ability of the plaintiff to breathe in fresh air and to do so in a normal and healthy manner." (*Id.* ¶ 61.).

**The Current Mask Mandate & Executive Order**

The Governor's operative order is Executive Order No. 13A, which requires, in paragraph 1, that "[a] person while indoors in a public place who does not maintain a safe social distance of approximately six feet from every other person and who is not fully vaccinated for COVID-19 shall cover their mouth and nose with a mask or cloth face covering." The order also creates an exception to mask-wearing for those with a medical condition, behavioral condition, or disability, and for those under the age of twelve. Executive Order No. 13A, ¶ 1(a).

The order further directs the Commissioner of Public Health to issue a rule designating "a comprehensive list of facilities, venues, and other locations where masks and face coverings are required," regardless of vaccination status. Executive Order No. 13A, ¶ 1(b). The order also allows municipal leaders to require masks in indoor settings regardless of vaccination status. Executive Order No. 13A, ¶ 1(d).[4] Refusing to wear a mask in accordance with subparagraphs 1(b) and 1(d)—*i.e.*, either within a facility, venue, or other location designated by the Commissioner of Public Health or within an indoor setting designated by a municipal leader in a municipal order issued pursuant to Conn. Gen. Stat. § 28-8a—can result in a fine of $100. Executive Order No. 13A, ¶ 1(b)(i). These fines can be levied by a variety of different municipal and state officials, including police and peace officers. Executive Order No. 13A, ¶ 1(b)(ii). Finally, nothing in Executive Order No. 13A limits the authority of the Commissioner of Education and the Commissioner of Early Childhood to issue operational rules, including but not limited to mask requirements, pursuant to Executive Order No. 9, Section 1, a section which was also extended by Executive Order No. 14A. Executive Order No. 13A, ¶ 1(f).

On August 7, 2021, the then Acting Commissioner of Public Health, per the delegation contained in Paragraph 1(b), issued a rule that all individuals, regardless of vaccination status, would be required to wear a face-covering mask in six enumerated categories of locations, to include certain school settings; childcare facilities; healthcare facilities; homeless or temporary shelters; correctional and detention facilities; and transportation hubs or stops and while passengers on public modes of transportation, *i.e.*, trains, buses, ferries and rideshare vehicles. *See* Acting Comm'r Deidre S. Gifford, Connecticut Dep't of Public Health, Conditions and Environments Requiring Universal Masking for the Prevention of COVID-19 on and after May

---

[4] Permitting municipalities to institute their own mask mandates is one of the few substantive differences between Executive Orders Nos. 12A and 13A. This change does not impact the Court's decision.

19, 2021 (Aug. 7, 2021).[5] The Department of Education, for its part, appears to rely on the Commissioner of Public Health's mask mandate requirements, with the exception that schools may allow fully vaccinated teachers to unmask when fully engaged in active instruction at the front of the classroom as long as the students are masked. *See* Connecticut State Dep't of Educ., Fall 2021 Adapt, Advance, Achieve: Connecticut's Plan to Learn and Grow Together, at 3 (August 19, 2021).[6]

**Discussion**

Both the operative SAC and PTAC sound in six counts: (1) violation of the constitutional right to expression and assembly; (2) violation of the constitutional right to move freely; (3) violation of the constitutional right to personal medical decisions; (4) violation of the constitutional right to privacy; (5) 42 U.S.C. § 1983; and (6) the orders were *ultra vires* and/or Conn. Gen. Stat. § 28-9 is constitutionally vague or overbroad. As revealed above, both in his filings and at oral argument, Plaintiff conceded that many of his claims were not viable and that his case rests on the alleged violation of his substantive due process right to breathe freely without a mask. (*E.g.*, Pl.'s Reply Mem. 4, ECF No. 39; Pl.'s Opp. Mem. 9, ECF No. 29.) Plaintiff seeks declaratory and injunctive relief.[7]

---

[5] This document has been updated as the Governor's executive orders have been updated and as leadership within the Department of Public Health has changed. Each version of the document is essentially the same, and all can be found at: https://portal.ct.gov/Coronavirus/Pages/Emergency-Orders-issued-by-the-Governor-and-State-Agencies. The latest version of this guidance issued on November 22, 2021 and contains no substantive changes to the categories listed above.

[6] Neither party relied upon or cited to these documents. Nevertheless, the Court takes judicial notice of these publicly available documents. *See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004). The Department of Education's guidance can be found at: https://portal.ct.gov/SDE/COVID19/COVID-19-Resources-for-Families-and-Educators.

[7] The Court construes this substantive due process claim as brought pursuant to 42 U.S.C. § 1983 rather than a cause of action deriving directly from the due process clause. *See Pauk v. Bd. of Trustees of City University of New York*, 654 F.2d 856, 865 (2d Cir. 1981) ("[W]hen [Section] 1983 provides a remedy, an implied cause of action grounded on the Constitution is not available."). Notably, the Plaintiff does include a claim pursuant to Section 1983 into which he incorporates each of his constitutional claims.

As to this substantive due process claim, the Governor argues that Plaintiff's case fails both for jurisdictional reasons and on the merits. The Governor also argues that these same reasons render the filing of another amended complaint futile. Specifically, the Governor argues: (1) To the extent that Plaintiff seeks a declaration that superseded or repealed Executive Orders were unlawful, such a claim would be barred by the Eleventh Amendment; (2) Plaintiff has failed to carry his burden to demonstrate that he has standing to bring this case because his complaint is conclusory and fails to allege an injury in fact, his complaint fails to allege an injury that is fairly traceable to the Governor, and his complaint fails to allege anything other than a nonjusticiable generalized grievance; (3) Plaintiff's complaint is barred by the Eleventh Amendment because the Governor has no role in enforcing the mask mandate; (4) Plaintiff has failed to state a claim for relief under the traditional substantive due process framework; and (5) Plaintiff cannot state a claim for relief under the more deferential standard for reviewing public health-related ordinances in *Jacobson v. Massachusetts*, 197 U.S. 11 (1905).

Because the Court finds that Plaintiff's action against the Governor is barred by the Eleventh Amendment and that amending the complaint would not cure this deficiency, the motion to amend is denied and the case is dismissed with prejudice. The Court therefore need not take up the alternative arguments advanced by the Governor.[8]

### *Eleventh Amendment*

The Governor raised the Eleventh Amendment issue on which the Court's decision rests for the first time in his opposition to Plaintiff's motion for leave to amend. But because the issue implicates the Court's subject matter jurisdiction, it may be raised at any time. *See* Fed. R. Civ. P. 12(h)(3); *Hughes v. Patrolmen's Benevolent Ass'n of New York, Inc.*, 850 F.2d 876, 881 (2d Cir.

---

[8] Because Eleventh Amendment immunity implicates the Court's jurisdiction, the Court reaches this issue first, without considering the merits. *See National R.R. Passenger Corp. v. McDonald*, 779 F.3d 97, 100 (2d Cir. 2015).

1988) ("Federal subject matter jurisdiction may be raised at any time during litigation . . . ."). The Governor argues that Plaintiff's claims for injunctive relief are barred by the Eleventh Amendment because they do not fall into the exception to sovereign immunity recognized in *Ex parte Young*, 209 U.S. 123 (1908). The argument derives from the fact that the Governor has no identifiable enforcement authority under the operative executive order as is required to proceed under *Ex parte Young*. Plaintiff, though having the opportunity both in writing and at oral argument, has not offered a substantive response to this argument.

"[T]he principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Art. III." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). This limitation is enshrined in the Eleventh Amendment, which abrogated the Supreme Court's decision in *Chisholm v. Georgia*, 2 Dall. 419 (1793). *See id.* at 97–98. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The amendment has been read to bar from federal court suits brought against States by their own citizens. *See Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890); *see also Employees of Dep't. of Public Health & Welfare v. Dep't of Public Health & Welfare*, 411 U.S. 279, 280 (1973) ("Although the Eleventh Amendment is not literally applicable since petitioners who brought suit are citizens of [the State being sued], it is established that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state."). States may consent to suit or waive their immunity, and Congress, acting pursuant to the Fourteenth Amendment, may abrogate the States' sovereign immunity. *See Pennhurst*, 465 U.S. at 99. But a State's consent to

suit and Congress's abrogation of the States' sovereign immunity must be "unequivocally expressed." *See id.*[9]

There is an exception, however, to Eleventh Amendment sovereign immunity. The Supreme Court held in *Ex parte Young* that where officers of the State, clothed with some duty to enforce the laws of the State, threaten to or are about to commence civil or criminal proceedings to enforce an unconstitutional act or otherwise violate an individual's federal rights, the threatened individual may seek an injunction against that state officer to prevent the enforcement of the unconstitutional act. *Ex parte Young*, 209 U.S. 123, 156 (1908); *National R.R. Passenger Corp. v. McDonald*, 779 F.3d 97, 100 (2d Cir. 2015) ("An exception [to a State's sovereign immunity] exists for suits against state officers alleging a violation of federal law and seeking injunctive relief that is prospective in nature."). Important to the analysis, the official being sued must have (1) a particular duty to enforce the law in question and (2) a demonstrated willingness to exercise that duty. *See Roberson v. Cuomo*, 524 F. Supp. 3d 196, 223 (S.D.N.Y. 2021) (collecting cases); *see also Lighthouse Fellowship Church v. Northam*, 515 F. Supp. 3d 384, 395 (E.D. Va. 2021) (stating that a state officer can only be sued and enjoined under *Ex parte Young* if (1) there is a "special connection" between the officer sued and the enforcement of the challenged statute, and (2) the officer acted or threatened to enforce the statute) *vacated on other grounds* --- F.4th ---, 2021 WL 5894891 (4th Cir. Dec. 14, 2021). "Applicability of the *Ex parte Young* exception turns on who has the prospective authority to *enforce* the law, not on who had retrospective authority to *create* the law." *Lighthouse Fellowship Church*, 515 F. Supp.3d at 396 (emphasis in original).

With respect to these requirements, "[a] governor does not meet this exception solely 'based upon the theory that [he or she], as the executive of the state, was, in a general sense,

---

[9] Title 42 U.S.C. § 1983 does not abrogate state sovereign immunity. *See Quern v. Jordan*, 440 U.S. 332, 342 (1979).

11

charged with the execution of all its laws.'" *See Hund v. Cuomo*, 501 F. Supp. 3d 185, 197 (W.D.N.Y. 2020) (quoting *Ex parte Young*, 209 U.S. at 157) (alterations in *Hund*). Indeed, if a suit could be brought against a governor based upon his general duty to enforce the law alone, then "the constitutionality of every act passed by the legislature could be tested by a suit against the governor" without limitation, a result which would, in effect, make the State a party to the suit and undermine the State's sovereign immunity. *See Ex parte Young*, 209 U.S. at 157.

Here, the Governor argues that the Plaintiff can establish neither prerequisite to the *Ex parte Young* exception because the Governor has no role in or even connection to the enforcement of Executive Order No. 13A. The Court agrees.

Executive Order No. 13A does not create or contemplate any duty on the part of the Governor with respect to the enforcement of the order. First, the language in the mask mandate at Paragraph 1, which the Plaintiff quotes in Paragraph 2 of the PTAC, has no enforcement provision. Paragraph 1 requires that "[a] person while indoors in a public place who does not maintain a safe social distance of approximately six feet from every other person and who is not fully vaccinated for COVID-19 shall cover their mouth and nose with a mask or cloth face cover." Executive Order No. 13A contains no penalty provision nor means of enforcing this dictate. Without any enforcement provision obligating anyone, let alone the Governor in particular, to enforce this mask mandate, the Plaintiff has not identified a basis upon which to circumvent the Eleventh Amendment under *Ex parte Young*. *See Roberson*, 524 F. Supp. 3d at 223 ("Governor Cuomo's general duty to execute the laws is not sufficient to make him a proper party. . . . To the extent he has played a role in the parole revocation process via executive orders and an emergency directive, it is the Parole Board or DOCCS—not Governor Cuomo—who have promulgated and enforced all procedures related to the detention (or release) of alleged parole violators."); *see also Kuck v.*

*Danaher*, 822 F. Supp. 2d 109, 142 (D. Conn. 2011) ("[C]ourts in the Second Circuit have not extended the exception under *Ex parte Young* on the basis that a state official has a general duty to execute and enforce state laws.") (citations omitted).

Further, to the extent the Plaintiff challenges the mask mandate that might derive from Paragraph 1(b), which is not clear in either the SAC or the PTAC, Executive Order No. 13A separates the Governor from that paragraph's enforcement rather than creating a particular duty on the part of the Governor to enforce it. Indeed, the paragraph delegates both rule making and enforcement authority to others.

Paragraph 1(b) provides in pertinent parts:

> b.  The Commissioner of Public Health shall issue a rule setting forth a comprehensive list of facilities, venues, and other locations where masks and cloth face coverings are required, including for people who are vaccinated . . .
>
>     i.  Any person who fails to wear a mask or cloth-face covering as required **in section (b) above or any order described in subsection (d) of this order** . . . shall be guilty of a violation and fined one-hundred dollars. . . .
>
>     ii. Section 51-164n(b) of the Connecticut General Statutes is amended to authorize the Commissioner of Public Health, local health directors, district health directors and their designees; state and municipal police officers and peace officers as designated in Section 53a-3(9) of the Connecticut General Statutes; and public safety departments of institutions of higher education to issue fines for the violation of the rule established in **section (b)** above. . . .

(Emphasis added.)[10]

A plain reading of these paragraphs reveals that Executive Order No. 13A delegates authority to the Commissioner of Public Health to establish rules regarding masking requirements regardless of vaccination status. Those requirements, as opposed to those found in Paragraph 1,

---

[10] Paragraph 1(d) addresses mandates issued by municipalities and is not germane to the issues before the Court.

are then subject to the enforcement and penalty provisions that follow in Paragraph (1)(b)(i) and (ii). Further, Paragraph (1)(b)(ii) specifically authorizes "the Commissioner of Public Health, local health directors, district health directors and their designees; state and municipal police officers and peace officers as designated in Section 53a-3(9) of the Connecticut General Statutes; and public safety departments of institutions of higher education to issue [the available] fines." While the Governor may have a general authority to enforce these provisions, as he does with respect to the laws of the state, Executive Order No. 13A does not create a *particular* duty to do so. To the contrary, Paragraphs 1(b)(i–ii) specifically charge other state officials with the authority to enforce rules promulgated under Executive Order No. 13A. So even if Plaintiff's complaint challenged the mask mandate that derives from Paragraph 1(b), Plaintiff's case against the Governor is misplaced. *Compare Hund*, 501 F. Supp. 3d at 198 (holding that claims against the governor were barred by the Eleventh Amendment but that claims against another state official, who had enforcement authority, could proceed); *and Roberson*, 524 F. Supp. 3d at 224 (holding that although the governor was not a proper defendant by which to challenge enforcement of certain regulations governing parole decisions, the chairperson of the board of parole was a proper defendant because he was charged with enforcement of the regulations at issue). And as was the case in *Hund* and *Roberson,* the Governor's act of delegating this authority does not bring him within the *Ex parte Young* exception to the Eleventh Amendment.[11]

Moreover, insofar as the Governor has no "particular duty to enforce" Executive Order No. 13A, it is axiomatic that he has not "demonstrated willingness to exercise that duty." *See Roberson,*

---

[11] The enforcement provisions, or lack thereof, in the orders necessarily implicate the Governor's alternative argument that the Plaintiff has no standing insofar as his claimed injury (breathing through a mask) is not "fairly traceable" to the challenged Executive Orders or redressable by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Because this suit is barred by the Eleventh Amendment, the Court need not decide whether Plaintiff has sufficiently alleged that his injury is fairly traceable to the Governor or that the Court could alleviate his claimed injury with a favorable decision.

14

524 F. Supp. 3d at 223. Plaintiff has failed to allege that the Governor himself "has acted or threatened to enforce [the Paragraph 1 mask mandate in Executive Order No. 13A] in any real sense." *See Tigges v. Northam*, 473 F. Supp. 3d 559, 569 (E.D. Va. 2020) (holding that the plaintiff had failed to show that the governor had a special relationship to several COVID-19-related orders and that he had acted or threatened to enforce those orders in any real sense). As there is no enforcement provision in Paragraph 1, no threat of enforcement looms. And although the Governor has authorized enforcement of the Paragraph 1(b) mandates promulgated by the Commissioner of Public Health, as discussed above, enforcement is not the Government's responsibility.

*Futility*

"Rule 15(a) [of the Federal Rules of Civil Procedure] declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Futility is one justification for denying leave to amend. *See id.*; *see also Jones v. New York State Division of Military and Naval Affairs*, 166 F.3d 45, 55 (2d Cir. 1999) (affirming denial of leave to amend where the "proposed amended complaint would be subject to immediate dismissal.").

In this case, the PTAC—or any further amendment—would be subject to immediate dismissal because the Governor, as discussed above, has no particular duty to enforce Executive Order No. 13A and Plaintiff's suit against him is therefore barred by the Eleventh Amendment.[12] The deficiency in Plaintiff's case is that he challenges a mandate that has no express enforcement provision at all (Paragraph 1) or, alternatively, has sued the wrong individual with respect to the

---

[12] As noted previously, the Court conducted the Eleventh Amendment analysis by considering Executive Order No. 13A despite the fact that Plaintiff's proposed amended complaint cites to Executive Order No. 12A.

15

mandates for which enforcement is expressly contemplated.[13] Amending the complaint to reflect the Governor's operative executive order will not cure these deficiencies.

**Conclusion**

For the forgoing reasons, Plaintiff's Motion for Leave to Amend, ECF No. 36, is DENIED, and the Governor's Motion to Dismiss, ECF No. 27, is GRANTED. This case is DISMISSED with prejudice, and the Clerk of the Court is directed to close the file.

**SO ORDERED** at Bridgeport, Connecticut, this 15th day of December 2021.

                          /s/ Kari A. Dooley
                          KARI A. DOOLEY
                          UNITED STATES DISTRICT JUDGE

---

[13] In making this observation, the Court notes that Plaintiff fails to allege that any state actor has taken or threatened to take enforcement action against him for violating these or other mask mandates, a failure raised by the Governor in connection with his argument that the Plaintiff lacks standing to bring this action. Although the Court does not address the standing argument, for purposes of *Ex parte Young,* it nonetheless remains unclear who the "right defendant" might be under these circumstances.